**Bessie Joyce DAVIS, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civil A. No. 94–30220–LAC.**

United States District Court,
N.D. Florida.

Feb. 28, 1996.

Stephanie Taylor, Pensacola, FL, for Plaintiff.

J.D. Roy Atchison, U.S. Attorney's Office, Pensacola, FL, for Defendant.

## ORDER OF DISMISSAL

COLLIER, District Judge.

This is a personal injury action arising under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) & 2671 *et seq.* ("FTCA"). The Government moves to dismiss the complaint for lack of subject matter jurisdiction. (doc. 29). For the reasons below, the motion is granted.

### I. Background

On July 11, 1993 Plaintiff Bessie Joyce Davis ("Davis") visited the Fort Pickens area of the Gulf Islands National Seashore in Pensacola Beach, Florida. While walking on a cracked and uneven roadway in Battery Langdon Park, Davis lost her footing, fell to the ground and fractured her right elbow. Battery Langdon Park is part of a designated historic district pursuant to the National Historic Preservation Act, 16 U.S.C. §§ 470 *et seq.* The area in which Davis fell is part of an historic railroad right-of-way; it contains the remnants of rails and concrete slabs dating back to the early 1900s. At the time of Davis' fall, the area contained no signs warning visitors of the uneven pavement.

In July of 1994 Davis filed this suit claiming the National Park Service ("NPS") negligently failed to maintain the roadway in question and negligently failed to warn visitors of the danger it posed.

This motion followed.

### II. Discussion

 Pursuant to Federal Rule of Civil Procedure 12(b)(1), the Government argues Davis' complaint should be dismissed for lack of subject matter jurisdiction. Specifically, the Government contends NPS' decisions regarding roadway maintenance and warning signs fall within the "discretionary function exception" to the FTCA's waiver of sovereign immunity. When subject matter jurisdiction is attacked under Rule 12(b)(1), the plaintiff bears the initial burden of showing jurisdiction is proper under the FTCA; however, the Government "bears the ultimate burden of

proving the applicability of the discretionary function exception." *Valdez v. United States,* 56 F.3d 1177, 1179 (9th Cir.1995). In ruling on a Rule 12(b)(1) motion, moreover, the court may look to materials outside the pleadings.[1] *Williams v. United States,* 50 F.3d 299, 304 (4th Cir.1995). Indeed, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* With this standard in mind, the court agrees the complaint should be dismissed.

 Under the doctrine of sovereign immunity, a party cannot bring a tort claim against the United States unless the Government expressly consents to suit. *United States v. Orleans,* 425 U.S. 807, 814, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976). Through the Federal Tort Claims Act, the Government has waived its sovereign immunity for claims arising from the negligence of government employees acting within the course and scope of their employment. *See* 28 U.S.C. § 1346(b). That waiver is limited, however, by the "discretionary function exception," which preserves sovereign immunity for tort claims "based upon the exercise or performance or failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. 2680(a).

 This exception "marks the boundary line between Congress' willingness to impose tort liability on the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. Varig Airlines,* 467 U.S. 797, 808, 104 S.Ct. 2755, 2762, 81 L.Ed.2d 660 (1984). The exception was designed to prevent courts from "second-guessing," through tort actions, the way government officials choose to balance economic, social and political factors as they carry out their official duties. *Id.* at 814, 104 S.Ct. at 2766.

*Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982).

---

1. The court's consideration of materials outside the pleadings does not convert a Rule 12(b)(1) motion into a summary judgment motion.

■ In applying the exception, the court must conduct a two-step analysis. First, the court must determine whether the challenged government conduct involves "an element of judgment or choice." *Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988); *see also United States v. Gaubert,* 499 U.S. 315, 322, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991). For example, if a federal statute or regulation mandates the course of action a government employee must follow, no element of judgment or choice is present, and the discretionary function exception does not apply. *Berkovitz,* 486 U.S. at 536, 108 S.Ct. at 1958.

Second, assuming an element of judgement or choice is present, the court must determine whether that judgment is the type "Congress intended to shield from tort liability." *Varig,* 467 U.S. at 813, 104 S.Ct. at 2764. Specifically, the court must determine whether the judgment is "grounded in social, economic [or] political policy" considerations. *Id.* at 814, 104 S.Ct. at 2765; *see also Gaubert,* 499 U.S. at 325, 111 S.Ct. at 1275. If both steps of the test are satisfied, the Government retains its sovereign immunity and the court lacks subject matter jurisdiction over the claim. With this in mind, the court turns to Davis' claims.

### A. *Failure to Maintain the Roadway*

■ Davis first contends NPS negligently failed to maintain the roadway on which she fell. Applying the discretionary function analysis, the court first concludes NPS' decisions regarding roadway maintenance involve an element of "judgment or choice." *See Gaubert,* 499 U.S. at 322, 111 S.Ct. at 1273. In this regard, Davis points to no federal statute or regulation dictating the manner in which NPS must maintain roadways in designated historic districts. In fact, federal statutes and policies indicate the opposite is true: such decisions are subject to NPS' discretion. The United States Code sets forth NPS' primary mission:

[T]o conserve the scenery and the natural and historic objects and the wildlife therein and to provide for the enjoyment of the same in such manner and by such means

as will leave them unimpaired for the enjoyment of future generations.

16 U.S.C. § 1. NPS' official policy manual further provides:

The National Park Service will manage recreational activities and settings so as to protect park resources, provide for public enjoyment, promote public safety, and minimize conflicts with other visitor activities and park uses ....

Appropriate tools for managing recreational activities may include general or special regulations; permit and reservation systems; and local restrictions, public use limits, closures, and designations *implemented under the discretion of the superintendent.* Any restrictions on recreational use will be limited to the minimum necessary to protect park resources and values and to promote visitor safety and enjoyment.

*National Park Service Policies,* 8:2 (December 1988) (emphasis added). As to safety hazards, the manual provides: "Where practicable and not detrimental to NPS mandates to preserve park resources, known hazards will be reduced or removed." *Id.* at 8:6. Accordingly, NPS must exercise its own judgment in deciding whether and how to maintain historic roadways. The first step of the discretionary function test is therefore satisfied.

Turning to the second step, the court concludes NPS' decisions regarding the roadway are also "grounded in social, economic [or] political policy" considerations. *See Varig,* 467 U.S. at 814, 104 S.Ct. at 2765. As mentioned, Battery Langdon Park is part of a designated historic district pursuant to the National Historic Preservation Act, 16 U.S.C. §§ 470 *et seq.* Under section 106 of that Act, no project capable of changing the character or use of an historic site may be undertaken until it has been reviewed by the Advisory Council on Historic Preservation, which seeks to preserve the historic integrity of national landmarks. *See* 36 C.F.R. §§ 800.1 *et seq.* Jerry Eubanks, the Gulf National Seashore Superintendent, testified he cannot repave or resurface the roadway in question unless he first receives section 106 clearance. He further testified he sought and, in March

of 1993, eventually obtained clearance to repave the roadway.

In addition to section 106 clearance, however, Eubanks testified he cannot repave the roadway until he receives appropriate funding. As Superintendent, Eubanks must prioritize limited funding among the Park's various needs. To date, more urgent projects have prevented him from appropriating money to the roadway.

Accordingly, NPS' decisions regarding this project require it to balance competing factors of historic and natural preservation, public safety, aesthetics and budgetary constraints. The court finds this to be exactly the type of decision Congress intended courts not to "second-guess" through tort actions. *See Varig Airlines,* 467 U.S. at 814, 104 S.Ct. at 2764. Other federal courts have reached the same conclusion when faced with similar claims. *See Valdez,* 56 F.3d at 1177 (NPS decisions regarding maintenance of hiking trail required it to balance policy concerns of preserving natural environment, maximizing access to the Park and minimizing safety hazards; as such, decisions were immune from tort liability); *Zumwalt v. United States,* 928 F.2d 951 (10th Cir.1991) (NPS decisions regarding maintenance of hiking trail and posting of warning signs fell within discretionary function exception).

■ Before moving to Davis' next claim, the court addresses several of her arguments that deserve discussion. First, Davis contends the discretionary function exception should not apply in this case because section 106 clearance had already been given to the repaving project at the time she suffered her injuries. Thus, Davis argues, NPS knew of the dangerous condition, but still failed to correct it. The court must reject this argument because the discretionary function exception applies "whether or not the discretion involved [is] abused." 28 U.S.C. § 2680(a). Therefore, once the court finds government activity is discretionary, it is irrelevant whether the Government was in fact negligent in exercising that discretion. Consequently, the fact NPS may have been negligent in failing to repave the roadway does not alter the court's conclusion. To hold otherwise would eviscerate the discretionary function exception. *See Childers v. United States,* 841 F.Supp. 1001, 1013 (D.Mont.1993), *aff'd,* 40 F.3d 973 (9th Cir.1994), *cert. denied,* — U.S. ——, 115 S.Ct. 1821, 131 L.Ed.2d 744 (1995).

Davis next argues the exception should not apply because roadway maintenance decisions do not involve social, economic or political policy considerations. In support, she cites *ARA Leisure Services v. United States,* 831 F.2d 193 (9th Cir.1987), in which the Ninth Circuit allowed suit against the Government for failing to properly maintain a stretch of highway in the Denali National Park. The court finds *ARA Leisure Services* distinguishable, however, because the misconduct there—failure to maintain a well-travelled highway in accordance with pre-set NPS standards—was "ordinary 'garden-variety' negligence." *Id.* at 196 (citing *Aslakson v. United States,* 790 F.2d 688, 693–94 (8th Cir.1986)). The government activity in that case did not involve important policy considerations such as the preservation of historic and natural resources, as in the instant case.

■ Finally, Davis argues the discretionary function exception should not apply because the record shows NPS did not consciously weigh policy considerations in deciding whether or not to repave the roadway; instead, Eubanks testified he sought section 106 clearance mainly because the uneven pavement was an "eyesore." Again, the court cannot accept this argument. By giving section 106 approval to the project, the Advisory Council on Historic Preservation presumably weighed social and political policies, regardless of whether Superintendent Eubanks did so. At any rate, NPS' subjective intent regarding the roadway decision is not the relevant inquiry. *See Gaubert,* 499 U.S. at 325, 111 S.Ct. at 1275. Instead, the relevant inquiry is whether, objectively, the decision was "susceptible" to political, economic and social policy analysis. *Id.* Because the court finds the decision susceptible to such analysis, it is largely irrelevant whether such analysis actually took place. *See Cope v. Scott,* 45 F.3d 445, 449 (D.C.Cir.1995); *Childers,* 841 F.Supp. at 1013.

## B. *Failure to Post Warning Signs*

 Turning to Davis' next claim, the court first concludes NPS' decision whether or not to post warning signs at Battery Langdon Park involves an element of "judgment or choice." *See Gaubert,* 499 U.S. at 322, 111 S.Ct. at 1273. Davis points to no federal authority mandating NPS to post warning signs in historic districts. Based on the NPS statutes and policies previously discussed, therefore, the court finds the first step of the discretionary function test is satisfied.

Applying the second step, the court further concludes the decision is "grounded in social, economic [or] political policy" considerations. *See Varig,* 467 U.S. at 814, 104 S.Ct. at 2765. The decision whether and how to post warning signs in historic areas and/or natural preserves requires NPS to weigh a number of policy judgments. Signs may compromise the park's historic and/or natural integrity. Consequently, courts have recognized such decisions require NPS to weigh concerns of, *inter alia,* natural and historic preservation, public safety and budgetary constraints. *See Kiehn v. United States,* 984 F.2d 1100 (10th Cir.1993) (decision to post warning signs at Dinosaur National Monument subject to discretionary function exception); *Zumwalt,* 928 F.2d at 951 (decision to post warning signs on hiking trail subject to discretionary function exception); *Fahl v. United States,* 792 F.Supp. 80, 83 (D.Ariz.1992) (decision to post warning signs at Grand Canyon National Park subject to discretionary function exception). In the instant case, the court agrees NPS' decision regarding warning signs at Battery Langdon Park is the type of activity "Congress intended to shield from tort liability." *See Varig,* 467 U.S. at 813, 104 S.Ct. at 2764.

In response, Davis again argues the discretionary function exception should not bar suit because NPS never consciously weighed policy considerations in deciding whether or not to post warning signs in the area. Because NPS' subjective intent is not the relevant inquiry, *see Gaubert,* 499 U.S. at 325, 111 S.Ct. at 1275, the court cannot accept Davis' reasoning.

## III. *Conclusion*

Accordingly, the court finds the government activity alleged to be negligent in this case falls within the discretionary function exception to the Federal Tort Claims Act. Therefore, the United States retains its sovereign immunity as to Davis' claims, and this court lacks subject matter jurisdiction to hear this case.

It is hereby **ORDERED** that Defendant's motion to dismiss the complaint (doc. 29) is **GRANTED.** This case is **DISMISSED** with prejudice; the clerk shall remove it from the active docket of the court.

**ORDERED.**