119 F.3d 438
 David ROSEBUSH, Valerie Rosebush, and David Rosebush, as
Guardian Ad Litem for Natasha Rosebush,
Plaintiffs-Appellants,
v.
UNITED STATES of America, United States Forest Service,
Defendants-Appellees.
 No. 96-1357.
 United States Court of Appeals,
Sixth Circuit.
 Submitted April 21, 1997.
Decided July 16, 1997.
 
 Mark A. Wisti (briefed), Wisti & Jaaskelainen, Hancock, MI, for Plaintiffs-Appellants.
 Steven B. Snyder (briefed), U.S. Department of Justice, Torts Branch Civil Division, Washington, DC, for Defendants-Appellees.
 Before: MERRITT, RYAN, and HILL,* Circuit Judges.
 HILL J., delivered the opinion of the court, in which RYAN, J., joined. MERRITT, J. (pp. 444-447), delivered a separate dissenting opinion.OPINION
 HILL, Circuit Judge.
 
 
 1
 Plaintiffs David and Valerie Rosebush brought this action against the United States and the United States Forest Service under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), claiming damages for injuries suffered by their sixteen-month old daughter when she fell into a fire pit at a government campground. The district court dismissed plaintiffs' complaint, holding that the federal government's operation and maintenance of the campground is a "discretionary function," for which it has not waived immunity under the Federal Tort Claims Act. This appeal followed.
 
 I.
 
 2
 According to the complaint,[1] David and Valerie Rosebush went camping with their sixteen-month old daughter Natasha at the Camp 7 Lake Recreation Campground in the Hiawatha National Forest in the Upper Peninsula of Michigan. Each campsite is provided with a fire ring and pit, consisting of a large steel ring in the ground surrounded by a ring of concrete.
 
 
 3
 On the morning of June 26, 1994, Mr. Rosebush was at the campsite to get his fishing poles when Natasha wandered to the pit and fell in. She was badly burned by the hot coals smoldering in the pit.
 
 
 4
 Plaintiffs brought this action against the United States and the United States Forest Service under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b) alleging that the fire pit was an unreasonable hazard and that defendants were negligent in failing to place a grating over the fire pit and/or failing to place protective railings around the pit. Plaintiffs further claim that the Forest Service was negligent in assigning a campsite known to be unfit for occupancy because of the fire pit's dangerous condition. Finally, plaintiffs claim that the failure to warn of the dangers associated with the fire pit was a proximate cause of the third degree burns suffered by Natasha Rosebush.
 
 
 5
 The United States filed a motion to dismiss on two grounds: first, the action is barred because the management and maintenance of the campsite is a discretionary function, and discretionary functions are not actionable under the FTCA; and second, plaintiffs fail to state a claim upon which relief can be granted because the United States did not breach an actionable duty under Michigan law.
 
 
 6
 The district court dismissed plaintiffs' claims, holding that the action was barred by the discretionary function exception to the FTCA. We review the district court's application of the discretionary function exception and dismissal of this action de novo.[2] United States v. Yannott, 42 F.3d 999, 1003 (6th Cir.1994) (citations omitted), cert. denied, 513 U.S. 1182, 115 S.Ct. 1172, 130 L.Ed.2d 1125 (1995).
 
 II.
 
 7
 Congress has waived the sovereign immunity of the United States by giving district courts jurisdiction over certain tort actions against the United States. FTCA § 1346(b). Congress, however, excepted from this limited waiver "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." FTCA § 2680(a). If a case falls within this statutory exception to FTCA § 1346(b), the court lacks subject matter jurisdiction. Feyers v. United States, 749 F.2d 1222, 1225 (6th Cir.1984), cert. denied, 471 U.S. 1125, 105 S.Ct. 2655, 86 L.Ed.2d 272 (1985).
 
 
 8
 In a series of cases, the Supreme Court has articulated and refined a two-part test to be applied in determining whether a particular claim falls under this discretionary function exception to the waiver of sovereign immunity. See United States v. Gaubert, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); Berkovitz by Berkovitz v. United States, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988); United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984); Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). The first part of the test requires a determination of whether the challenged act or omission violated a mandatory regulation or policy that allowed no judgment or choice. Gaubert, 499 U.S. at 322-23, 111 S.Ct. at 1273-74; see also Graves v. United States, 872 F.2d 133, 137 (6th Cir.1989). If so, the discretionary function exception does not apply because there was no element of judgment or choice in the complained of conduct. Gaubert, 499 U.S. at 322, 111 S.Ct. at 1273. "The requirement of judgment or choice is not satisfied if a 'federal statute, regulation or policy specifically prescribes a course of action for an employee to follow,' because 'the employee had no rightful option but to adhere to the directive.' " Id. (quoting Berkovitz, 486 U.S. at 536, 108 S.Ct. at 1958-59).
 
 
 9
 If the challenged conduct is determined to be discretionary, the second part of the Gaubert test looks to see whether the conduct is "of the kind that the discretionary function exception was designed to shield." Id. at 322-23, 111 S.Ct. at 1273. In enacting FTCA § 2680(a), "Congress wished to prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy." Varig Airlines, 467 U.S. at 814, 104 S.Ct. at 2765; Berkovitz, 486 U.S. at 537, 108 S.Ct. at 1958-59. Thus, where there is room for policy judgment and decision, there is discretion of the sort protected by Section 2680(a). Dalehite, 346 U.S. at 36, 73 S.Ct. at 968.
 
 III.
 
 10
 In deciding whether the complained of conduct was grounded in judgment or choice, the crucial first step is to determine exactly what conduct is at issue. Autery v. United States, 992 F.2d 1523, 1527-28 (11th Cir.1993). Plaintiffs sub judice contend that the United States is liable because the Forest Service failed to make the fire pit safe for unsupervised toddlers, and to warn of the dangers of the fire pit. They also argue that the Forest Service failed to "eliminate[ ] safety hazards from recreation sites and immediately correct high priority hazards." They contend that the Forest Service was required to perform these functions based on the following two sections of the United States Forest Service Manual:
 
 
 11
 2332--Operation and Maintenance. Prepare and annually update an operation and maintenance plan for recreation sites. A separate plan may be prepared for a single site or group of sites or the plan may cover an entire range or district.
 
 
 12
 Give health and safety related items highest priority.
 
 
 13
 2332.1--Public Safety. To the extent practicable, eliminate safety hazards from recreation sites. To accomplish this, inspect each public recreation site annually before the beginning of the managed-use season. Maintain a record of the inspections and corrective actions taken with a copy of the operation and maintenance plan.
 
 
 14
 Immediately correct high-priority hazards that develop or are identified during the season or close the site.
 
 
 15
 Forest Service Manual, §§ 2332 and 2332.1 (1993) (FSM).[3]
 
 
 16
 The government, on the other hand, contends that the relevant conduct of the Forest Service is the management and operation of the Camp 7 Lake Recreation Campground. The fire pit is "but a small part of a campground that was administered pursuant to a comprehensive manual, a safety handbook, and an operations plan."[4]
 
 
 17
 Neither of these formulations is satisfactory. Plaintiffs' formulation of the issue collapses the discretionary function inquiry into a question of whether the Forest Service was negligent. Cf. Autery, 992 F.2d at 1527-28. Negligence, however, is irrelevant to our inquiry at this point. Id. It is the governing administrative policy, not the Forest Service's knowledge of danger, that determines whether certain conduct is mandatory for purposes of the discretionary function exception. Id. The FTCA expressly provides that the exception "applies to policy judgments, even to those constituting abuse of discretion." Dalehite, 346 U.S. at 33, 73 S.Ct. at 967 ("The exercise of discretion could not be abused without negligence or a wrongful act."). The government, however, has too broad a view of the conduct they describe as discretionary. The decision to have a campground is itself, of course, discretionary.
 
 
 18
 The relevant inquiry is whether the controlling statutes, regulations and administrative policies mandated that the Forest Service maintain its campsites and fire pits in any specific manner. See Autery, 992 F.2d at 1527. If not, the Forest Service's decisions as to the precise manner in which to do so would clearly fall within the discretionary function exemption to the government's tort liability. See Childers v. United States, 40 F.3d 973, 976 (9th Cir.1994), cert. denied, 514 U.S. 1095, 115 S.Ct. 1821, 131 L.Ed.2d 744 (1995)
 
 
 19
 None of the guidelines plaintiffs cite requires that a fire pit be maintained or designed in any particular way. There are no regulations that specify that families with children should not be assigned to campsites with fire pits. There are no regulations requiring the Forest Service to warn of the dangers of a fire pit, nor that classify the pit as a "high priority hazard" requiring correction.
 
 
 20
 On the contrary, Section 2332 requires only that the Forest Service prepare and annually update an "operation and maintenance" plan which gives health and safety related items the "highest priority." Additionally, "[t]he plan shall provide the information needed by District Ranger, recreation assistants, technicians or aides to effectively administer, operate and maintain recreation sites and areas." FSM § 2332. Such directives vest complete discretion in the Forest Service as to the development and implementation of operations plans for the management of the Camp 7 Lake Recreation Campground.
 
 
 21
 Nonetheless, plaintiffs contend that Section 2332.1 mandates a specific course of conduct, i.e., the "immediate correction of high-priority hazards." The plain language of the section, however, is to the contrary. The Forest Service is instructed to eliminate safety hazards from recreation sites "to the extent practicable ". Decisions concerning what constitutes "practicable" require the exercise of discretion which is protected by FTCA § 2680(a). See Varig Airlines, 467 U.S. at 797, 104 S.Ct. at 2755.
 
 
 22
 Furthermore, this discretion is not lessened by Forest Service knowledge of earlier accidents involving fire pits. This argument echoes plaintiffs' negligence theory of what conduct has been de-immunized. "It is the governing administrative policy, not the [Forest Service's] knowledge of danger, however, that determines whether certain conduct is mandatory for purposes of the discretionary function exception." Autery, 992 F.2d at 1528 (Park Service knowledge of danger from falling black locust trees and plan for removal of hazardous trees did not mandate that it perform the function of tree removal in any specific way).
 
 
 23
 The controlling statutes, regulations and administrative policies did not mandate that the Forest Service maintain its campsites and fire pits in any specific manner. Accordingly, the conduct of the Forest Service in making these decisions was within the discretionary function exception to the FTCA's waiver of immunity.
 
 IV.
 
 24
 The allegedly tortious conduct of the United States in this case involved a discretionary function. Therefore, we turn to the second part of the Gaubert test to determine whether the Forest Service's conduct--including the decisions to have fire pits and to make them open, without gratings or railings, and not to warn of the dangers of campfires--is the sort of conduct which the discretionary function exception was designed to shield? See Gaubert, 499 U.S. at 322-23, 111 S.Ct. at 1273-74. We hold that it is.
 
 
 25
 Decisions concerning the proper response to hazards are protected from tort liability by the discretionary function exception. Lockett v. United States, 938 F.2d 630, 639 (6th Cir.1991) (proper response to the discovery of PCBs in a residential area, including not making any response at all, is within the discretionary function exception to the FTCA); Myslakowski v. United States, 806 F.2d 94, 97 (6th Cir.1986), cert. denied, 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 793 (1987) (decision how or whether to warn the public that government jeeps for sale to the public might be susceptible to rollover is a discretionary function); Feyers, 749 F.2d at 1227 (decisions concerning proper manner of conducting railyard safety investigations a discretionary function).
 
 
 26
 Furthermore, decisions whether and how to make federal lands safe for visitors require making policy judgments protected by the discretionary function exception. Autery, 992 F.2d at 1527 (claims for injuries sustained when a tree fell on car as plaintiffs were driving through Great Smokey Mountain National Park barred by discretionary function exception because Park Service decisions concerning safeguarding visitors constitutes protected discretionary conduct); Bowman v. United States, 820 F.2d 1393, 1395 (4th Cir.1987) (design and use of Park Service facilities on the Blue Ridge Parkway a discretionary function because it requires balancing safety, aesthetics, environmental impact, and available financial resources); Wright v. United States, 868 F.Supp. 930 (E.D.Tenn.1994), aff'd, 82 F.3d 419 (6th Cir.1996) (exception protects decisions concerning how and whether to warn the public that trees might fall on a hiking trail).
 
 
 27
 Finally, the decision whether to warn of potential danger is a protected discretionary function. Graves, 872 F.2d at 137 (failure to warn of danger on dam over which motorboat plunged was within discretionary function exception); Childers, 40 F.3d at 976 (decisions concerning the manner and types of warnings to be placed on hiking trails in Yellowstone National Park were discretionary barring suit by family of eleven-year old boy who slipped on ice and fell to his death in Grand Canyon); Kiehn v. United States, 984 F.2d 1100, 1106 (10th Cir.1993) (decision whether to warn of dangers of rock climbing a discretionary function); Layton v. United States, 984 F.2d 1496, 1502-03 (8th Cir.1993) (Forest Service's failure to warn tree-cutting contractor regarding hazards in cutting trees protected by discretionary function exception). See also Buffington v. U.S., 820 F.Supp. 333 (W.D.Mich.1992); Fahl v. United States, 792 F.Supp. 80 (D.Ariz.1992).
 
 
 28
 Plaintiffs' reliance on Summers v. United States, 905 F.2d 1212 (9th Cir.1990) does not persuade us to a different result. In Summers, the Ninth Circuit held that the discretionary function exception did not immunize the Park Service from liability for failure to warn beachgoers of the dangers of fire rings. Id. at 1215. The court reasoned that the exception does not apply unless the evidence shows that the decision not to warn "was the result of a decision reflecting the competing considerations of the [Park] Service's sign policy." Id. at 1215. Under this reasoning, no discretionary function exception may be found unless the challenged conduct was the result of a reasoned policy decision.
 
 
 29
 This approach, however, was rejected a year later in Gaubert when the Supreme Court held:
 
 
 30
 When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion.... The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.
 
 
 31
 499 U.S. at 324-25, 111 S.Ct. at 1274-75. Thus, the requirement for a policy nexus is an objective not a subjective one. The proper inquiry is whether the challenged actions are "susceptible to policy analysis," not whether they were the result of a policy analysis. Id. See also Hughes v. United States, 110 F.3d 765 (11th Cir.1997).
 
 
 32
 Furthermore, Summers is inconsistent with the law in this Circuit. In Myslakowski, we held that even if there is no evidence that policy concerns were the basis of a challenged decision, the discretionary function exception applies if the decision is susceptible to policy analysis. Myslakowski, 806 F.2d at 97. We wrote:
 
 
 33
 The critical error in the trial court's analysis is in its conclusion that because the evidence does not show that the departmental policymakers evaluated the pros and cons of requiring that a warning be given concerning the rollover propensity of the jeep and then made a discretionary decision not to give such warnings, it therefore follows that no discretionary decision, of the kind contemplated by § 2689(a), was made concerning the terms, conditions, and "manner" of sale of the jeep. Thus, the statutory exception to the waiver of immunity for such decisions is inapplicable. We respectfully disagree.
 
 
 34
 The fact that, in making the discretionary policy judgment to sell the jeeps "as-is-where-is," the government officials may not have evaluated some or all of the dangers associated with the use of jeeps ... and given no thought to the need for warnings even in view of the [knowledge of their propensity to rollover] is not to say the considerations unaddressed are therefore outside the ambit of the discretionary judgment exception to the statute and a basis for establishing tort liability.
 
 
 35
 Id.
 
 
 36
 The law in this circuit is that "even the negligent failure of a discretionary government policymaker to consider all relevant aspects of a subject matter under consideration does not vitiate the discretionary character of the decision that is made." Id. See also Graves, 872 F.2d at 137-38 (citing Myslakowski ).
 
 V.
 
 37
 The management and maintenance decisions of the Forest Service at the Camp 7 Lake Recreation Campground including the decision to have open fire pits, the design of the pits, whether to enclose them within railings, and whether to warn of their dangers involves balancing the needs of the campground users, the effectiveness of various types of warnings, aesthetic concerns, financial considerations, and the impact on the environment, as well as other considerations. These decisions, therefore, are within the discretionary function exception to the FTCA's waiver of sovereign immunity.
 
 
 38
 The district court correctly ruled that the FTCA does not, in view of the discretionary function exception, waive sovereign immunity for plaintiffs' claims, and, therefore, dismissed them. That judgment is AFFIRMED.
 
 
 39
 MERRITT, Circuit Judge, dissenting.
 
 
 40
 Our Court's decision in this case means that the discretionary function exception has swallowed, digested and excreted the liability-creating sections of the Federal Tort Claims Act. It decimates the Act.
 
 
 41
 The Supreme Court has developed a two-prong test to govern the application of the discretionary function exception. First, the court must determine whether the conduct violated a mandatory regulation or policy that allowed no judgment or choice, a relatively easy standard to apply. United States v. Gaubert, 499 U.S. 315, 322, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991) (citing Berkovitz by Berkovitz v. United States, 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988)). If there is no mandatory regulation governing the conduct and the conduct involved an exercise of judgment, then the court must determine "whether that judgment is the kind that the discretionary function exception was designed to shield." Id. (quoting Berkovitz, 486 U.S. at 536, 108 S.Ct. at 1958). The second part of this test presents an ambiguous standard that is difficult to apply and that has produced a large number of inconsistent holdings in the circuit and district courts. The Congress and the Supreme Court have left it up to the lower courts to define this vague standard over time by applying it to fact patterns as they arise.
 
 
 42
 I agree with the majority that the applicable regulations did not mandate the Forest Service to maintain its campsites and fire pits in any specific manner. I do not agree that the Forest Service's decision regarding whether to place a grating, a railing, or a warning near a campfire pit is the kind of judgment that the discretionary function exception was designed to shield. In Gaubert, the Supreme Court explained that the discretionary function exception protects only governmental actions and decisions "grounded in the policy of the regulatory regime." Gaubert, at 325, 111 S.Ct. at 1275 (emphasis added). The reasoning behind the exception was to "prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." Gaubert, at 323, 111 S.Ct. at 1273 (quoting United States v. Varig Airlines, 467 U.S. 797, 814, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660 (1984)). Although I agree with the majority that safety precautions involve some judgment, I do not agree that the decision of the United States Forest Service in this case is grounded in the "policy of the regulatory regime." I fail to see a social, economic, or political policy behind a decision regarding whether to place gratings or railings or signs near a fire pit to make it safer for the public.
 
 
 43
 If we are not careful in our application of the second prong of the test, the discretionary function exception to the Tort Claims Act could potentially swallow the entire Act. As a result of the Gaubert decision, courts have given considerable deference to government assertions of policy discretion. Donald N. Zillman, Protecting Discretion: Judicial Interpretation of the Discretionary Function Exception to the Federal Tort Claims Act, 47 Me. L.Rev. 365, 382 (1995). "The Court ought not to use one phrase in one sub-section of the FTCA [Federal Tort Claims Act] to emasculate the rest of the statute." William P. Kratzke, The Supreme Court's Recent Overhaul of the Discretionary Function Exception to The Federal Tort Claims Act, 7 Admin. L.J. Am. U. 1, 31 (1993). In fact, the Supreme Court did not intend for the Gaubert decision to free the government from all liability under the Federal Tort Claims Act. As part of its discussion, the Court specifically stated that there are discretionary acts that are within the scope of a government agent's employment "but not within the discretionary function exception because these acts cannot be said to be based on the purposes that the regulatory regime seeks to accomplish." Gaubert, at 325, n. 7, 111 S.Ct. at 1275 n. 7.
 
 
 44
 Several other courts have agreed that there are limits to the actions which the discretionary function exception was designed to shield. As the Second Circuit explained, the Supreme Court's "rejection [in Gaubert ] of any simplistic reliance on the dichotomy between planning-level actions and operation-level actions" did not abolish the requirement that policy considerations "remain the touchstone for determining whether the discretionary function exception applies." Andrulonis v. United States, 952 F.2d 652, 654 (2nd Cir.1991) (held that the negligent omission of a warning of unsafe laboratory conditions unnecessarily placing the lives of workers at risk could not have been grounded in a policy scheme), cert. denied, 505 U.S. 1204, 112 S.Ct. 2992, 120 L.Ed.2d 869 (1992). Similarly, in Cope v. Scott, 45 F.3d 445 (D.C.Cir.1995), the D.C. Circuit held that even though the discretion regarding "where and what type of signs to post" for safety reasons involves judgments of engineering and aesthetics, those judgments are not sufficiently matters of public policy. See also Myers v. United States, 17 F.3d 890 (6th Cir.1994) (held that the discretionary function did not shield the Mine Safety and Health Administration from an action by survivors of a mine explosion because the safety inspectors were not authorized to conduct their inspections on the basis of social, economic or political policy); Routh v. United States, 941 F.2d 853 (9th Cir.1991) (failure to require specific safety equipment was not subject to discretionary function exception). As in these other cases, the government in this case has failed to articulate how its decision to protect the public from allegedly hazardous fire pits involved a judgment grounded in regulatory policy.
 
 
 45
 Plaintiff relies heavily on Summers v. United States, 905 F.2d 1212 (9th Cir.1990), in which the Ninth Circuit held that the discretionary function exception did not protect the National Park Service's decision not to warn beachgoers of the dangers posed by fire rings placed on the beach. The majority argues that the basis of the decision in Summers was the Ninth Circuit's conclusion that the Park Service provided no evidence to show that its decision reflected competing considerations. The majority concludes that Summers has been rejected because in Gaubert the Supreme Court held that the courts should focus on whether the decision was susceptible to policy analysis and not on whether such an analysis was actually conducted. The majority has read Summers too narrowly. The Ninth Circuit's holding in Summers was based on the conclusion that "the NSP's [Park Service's] failure to identify and warn of the danger to barefoot visitors of hot coals on park beaches resembles more a departure from the safety considerations established in Service policies ... than a mistaken judgment in a matter clearly involving choices among political, economic and social factors." Summers, 905 F.2d at 1216. This reasoning is still a fundamental part of the analysis of the discretionary function exception even after the Gaubert decision, and it is particularly applicable in this case.
 
 
 46
 The majority also argues that Summers is in conflict with the law in our Circuit. All of the cases cited by the majority are distinguishable because the government in those cases articulated to the Court how its conduct was based on social, economic, or political policy. In the case before us, as in Summers, the government completely failed to articulate how its decision was based on policy. In Myslakowski v. United States, 806 F.2d 94 (6th Cir.1986), cert. denied, 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 793 (1987), our Court applied the discretionary function exception to the government's decision to sell vehicles "as is." The Court explained that the government was faced with an important judgment as to whether it should sell the vehicles "as is" in order to relieve itself of the need to issue warnings and warranties or sell the vehicles with warnings and create potential liability. In Graves v. United States, 872 F.2d 133 (6th Cir.1989), our Court held that the discretionary function exception bars suit for failure to warn boaters of a dam on the Kentucky River. The Court explained that the government had made the judgment to close the area of the dam and "intimately connected with the decision" was the policy decision regarding the type of warnings which were effective and cost-justified in a closed area. In Lockett v. United States, 938 F.2d 630 (6th Cir.1991), we applied the discretionary function exception to the Environmental Protection Agency's decision that it lacked sufficient evidence of a violation of regulations at a hazardous waste site. The Court explained that judgments which determine the priorities of threats to public health and allocation of limited resources to protect the public were the types of decisions the discretionary function exception was intended to shield. Id. These cases involved policy judgments regarding appropriate methods for selling government vehicles, whether (and what type of) warnings are necessary for closed areas, and sufficiency of evidence to create a violation of environmental regulations. In contrast, in our case, the government has failed to explain how its decision was grounded in policy.
 
 
 47
 The majority did not address our decision in Myers v. United States, 17 F.3d 890 (6th Cir.1994), in which this Court held that the discretionary function exception did not shield the Mine Safety and Health Administration from an action by survivors of a mine explosion because the safety inspectors were not authorized to conduct their inspections on the basis of social, economic or political policy. The Court explained that the balancing of the interests of the miners and mine owners and effective use of limited resources was already done by the Congress and the Secretary of the Department of Labor. The inspectors were not to reweigh these interest but to determine compliance with safety. Their decisions were not based on policy decisions but rather on their "own observations, informed by professional judgment and knowledge of the industry." Id. at 898. Similarly, in the case currently before our Court, the decision of the Forest Service to handle the placing of a grate, railing or warning near a fire pit involves measures of prudent safety based on the knowledge and experience of the members of the Forest Service.
 
 
 48
 In other cases cited by the majority, the decisions were said to be based on a reasonable desire to protect the experience of the visitors in the park. Bowman v. United States, 820 F.2d 1393 (4th Cir.1987) (failing to place guardrail on Blue Ridge Parkway implicated consideration of protecting scenic vista); Zumwalt v. United States, 928 F.2d 951 (10th Cir.1991) (failure to post sign in a wilderness area implicated decision to protect wilderness experience); Autery v. United States, 992 F.2d 1523 (11th Cir.1993) (decision as to how to implement plan to remove hazardous trees implicated decision to preserve the natural state of the forest), cert. denied, 511 U.S. 1081, 114 S.Ct. 1829, 128 L.Ed.2d 458 (1994); Wright v. United States, 82 F.3d 419, 1996 WL 172119 (6th Cir. April 11, 1996) (unpublished) (decision regarding which trees should be cut implicated explicit decision to preserve wilderness); Childers v. United States, 40 F.3d 973 (9th Cir.1994) (manner and types of warnings to be placed on hiking trails in Yellowstone National Park implicate policy of preserving natural state of the park), cert. denied, 514 U.S. 1095, 115 S.Ct. 1821, 131 L.Ed.2d 744 (1995); Kiehn v. United States, 984 F.2d 1100 (10th Cir.1993). But in the instant case, the government has failed to make a persuasive argument that it refused to place a grating, railing or warning near the campfire pit in order to protect the experience of the camper.
 
 
 49
 I do not think that the discretionary function exception applies to this case. Therefore, I would remand this case to the district court for determination under the substantive state law of Michigan. 28 U.S.C. § 1346(b).
 
 
 
 *
 The Honorable James C. Hill, Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation
 
 
 [1]
 In reviewing the district court's dismissal of plaintiffs' complaint, we accept the factual allegations in the complaint as true. See United States v. Gaubert, 499 U.S. 315, 327, 111 S.Ct. 1267, 1276, 113 L.Ed.2d 335 (1991); Berkovitz by Berkovitz v. United States, 486 U.S. 531, 540, 108 S.Ct. 1954, 1960-61, 100 L.Ed.2d 531 (1988)
 
 
 [2]
 We address the issue of the applicability of the "discretionary function" exception under the FTCA first because it is one of federal court jurisdiction. Holding that federal jurisdiction does not exist, we do not reach the merits of the challenge under Michigan law. See Autery v. United States, 992 F.2d 1523, 1524 n. 2 (11th Cir.1993)
 
 
 [3]
 This is the only regulation plaintiffs contend the Forest Service violated
 
 
 [4]
 Recreation Operation and Maintenance Plan Manistique Ranger District DY 94 (Operation Plan), Forest Service Manual, Title 2300; the Forest Service Safety and Health Administration Handbook; and the Operation Plan, FSM Title 2300