James ALEF, Plaintiff,

v.

UNITED STATES of America, DEPARTMENT OF INTERIOR, Defendant.

No. 1:97–CV–114.

United States District Court,
W.D. Michigan,
Southern Division.

Nov. 26, 1997.

Edgar Roy, III, Smith, Johnson & Brandt, PC, Traverse City, MI, for James Alef.

Margaret A. Smith, Asst. U.S. Attorney, Michael H. Dettmer, United States Attorney, Grand Rapids, MI, for U.S. Department of Interior.

### OPINION

QUIST, District Judge.

Plaintiff James Alef ("Alef") filed this action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680, alleging failure to warn of diving hazards at a national park. Defendant United States Department of Interior ("DOI" or "Government") has moved to dismiss for lack of subject matter jurisdiction on the grounds that the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a), applies to bar the suit.

### Facts

The DOI's National Park Service ("NPS") administers and operates the Sleeping Bear Dunes National Lakeshore Park ("Park"). North Bar Lake, a small inland lake near Empire, Michigan, is part of the Park. Alef alleges that the shore of North Bar Lake is a popular swimming and diving area. On July 15, 1993, Alef and a friend spent about two hours repeatedly running down a sand dune on the lakeshore and diving into the water, as they had done on many prior occasions. During Alef's last dive, his head struck the bottom of the lake, causing spinal cord injuries which rendered him a quadriplegic. After the DOI denied Alef's administrative claim, Alef filed this action pursuant to the FTCA claiming that the DOI owed Alef a duty as a public invitee to warn Alef of known dangerous conditions and to patrol the area in an effort to prevent members of the public from diving. Alef further alleges that the Park Rangers had a nondiscretionary practice of patrolling North Bar Lake and warning people not to dive.

The DOI has moved to dismiss for lack of subject matter jurisdiction based on evidence that only discretionary policies apply to Park warnings. (*See* Def.'s Br. Supp. Exs. 1 to 1–G.) The DOI has also presented evidence that the Park Superintendent, Ivan Miller ("Miller"), made an affirmative decision not to post warnings or patrol the area in order to "save money, protect the pristine nature of North Bar lake, allow it to remain a 'preserve' area, increase user accessibility, and create the least impact on the environment." (Second Miller Aff. ¶ 4, Def.'s Reply Br. Ex. 10.) Miller also reasoned that warnings were unnecessary because the cause of the accident was the ill-advised behavior of diving without first checking for water depth, rather than a latent, natural hazard. (*See id.*)

### Standard for Dismissal

■ The Sixth Circuit has adopted two standards for dismissal for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). *See Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

A *facial* attack on the subject matter jurisdiction alleged by the complaint merely questions the sufficiency of the pleading.

In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss. On the other hand, when a court reviews a complaint under a *factual* attack, as here, no presumptive truthfulness applies to the factual allegations.... When facts presented to the district court give rise to a factual controversy, the district court must therefore weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist. In reviewing these speaking motions, a trial court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts.

*Id.; accord United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir.1994); *Kroll v. United States*, 58 F.3d 1087, 1090 (6th Cir.1995)(per curiam).

The Government's motion is a factual attack, rather than a facial attack, because the Government has presented evidence that no mandatory policy existed that would preclude application of the discretionary function exception to the FTCA. The parties agree on the relevant law and dispute primarily the truth of the allegations of violations of nondiscretionary policy. Therefore, the Court must weigh the evidence presented to determine whether subject matter jurisdiction exists. The Court's findings will be preclusive only as to the jurisdictional issue. *Ritchie*, 15 F.3d at 598.

■ Ordinarily, the party claiming subject matter jurisdiction bears the burden of proof. *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 324. Accordingly, in actions under the FTCA, the plaintiff must invoke jurisdiction by alleging facts not excepted under 28 U.S.C. § 2680. *Carlyle v. United States*, 674 F.2d 554, 556 (6th Cir.1982). If the plaintiff succeeds, "the burden fall[s] on the government to prove the applicability of a specific provision of § 2680." *Id.; accord Angle v. United States*, 931 F.Supp. 1386, 1390 (W.D.Mich.1994), *aff'd*, 89 F.3d 832 (6th Cir.1996) (per curiam). In this case, the complaint alleged, inter alia, a nondiscretionary failure to warn or patrol in breach of Park policy and practice.

(Compl. ¶¶ 17–19.) These allegations invoke the FTCA without relying on a failure to perform a discretionary function. In addition, the Government has not argued that the complaint fails to state a prima facie case under the FTCA. Therefore, the Government now bears the burden of establishing the applicability of the discretionary function exception to the FTCA.

### Analysis

The FTCA gives federal district courts exclusive jurisdiction over personal injury claims based on the negligence of federal employees under circumstances where a private person would be liable under the law of the place of accident. 28 U.S.C. § 1346(b)(1). However, § 1346(b)(1) does not apply to any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The purpose of this exception is "to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660 (1984).

■ The Supreme Court has developed a two-part test for application of the discretionary function exception. First, the conduct must "involv[e] an element of judgment or choice." *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988); *accord United States v. Gaubert*, 499 U.S. 315, 322, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991)(quoting *Berkovitz*). The exception does not apply to violations of mandatory regulations or policy. *Rosebush v. United States*, 119 F.3d 438, 441 (6th Cir. 1997); *see also Gaubert*, 499 U.S. at 322, 111 S.Ct. at 1273.

Second, even if "the challenged conduct involves an element of judgment, a court must determine whether that judgment is of the kind that the discretionary function exception was designed to shield.... The exception ... protects only governmental actions and decisions based on considerations of public policy." *Berkovitz*, 486 U.S. at 536–37, 108 S.Ct. at 1959. The inquiry is an objective one, asking whether the actions are "susceptible to policy analysis," rather than focusing "on the agent's subjective intent." *Gaubert*, 499 U.S. at 325, 111 S.Ct. at 1275. Therefore, at least in the Sixth Circuit, even a negligent failure to consider all relevant factors is not grounds for second-guessing the Government and escaping the exception. *Rosebush*, 119 F.3d at 444; *In re Ohio River Disaster Litig.*, 862 F.2d 1237, 1247–48 (6th Cir.1988).

### 1. DOI Policies

■ The Court must first determine whether the Government's actions involved an element of judgment or choice. "In deciding whether the complained of conduct was grounded in judgment or choice, the crucial first step is to determine exactly what conduct is at issue." *Rosebush*, 119 F.3d at 441. In *Rosebush*, the plaintiffs argued that the Forest Service violated the following "mandatory" regulation by failing to warn the plaintiffs of the dangers of a fire pit and by failing to childproof the fire pit at the plaintiffs' campsite:

> Give health and safety related items highest priority.
>
> ... To the extent practicable, eliminate safety hazards from recreation sites....
>
> Immediately correct high-priority hazards that develop or are identified during the season or close the site.

*Id.* (quoting United States Forest Service Manual). The court found that the plaintiffs' argument "collapse[d] the discretionary function inquiry into a question of whether the Forest Service was negligent." *Id.* at 442. Instead, the court found that the relevant inquiry was whether any regulations required the Forest Service to warn campers of fire pit dangers or classify fire pits as "high-priority hazards" under the regulation cited by the plaintiffs. *Id.* Finding that no such mandatory regulations existed, the court applied the discretionary function exception. *Id.* The court also found that the plain language of the cited regulation gave the Forest Service discretion through the phrase "to the extent practicable." *Id.*

This Court has reviewed every regulation submitted by the parties and scrutinized in particular the passages cited by Alef as mandatory policies which the DOI violated. In every instance, the plain language confers discretion on the DOI. A few examples will suffice to illustrate how Alef, like the *Rosebush* plaintiff, asks the Court to collapse the jurisdictional inquiry into his negligence claim.

In one instance, Alef cites a regulation stating that the Park Safety Officer "[s]hould be responsible for identifying any additional signs needed in the park area and advising management and assist[ing] in preparation of safety messages to be included in park/area brochures, or interpretive programs." (Loss Control Management Program Guideline, ch. 22 at 5, Def.'s Br. Supp. Ex. 1–C.) Alef's position that the DOI violated this regulation assumes that a "no diving" or "shallow water" sign was "needed." To the contrary, the regulation confers discretion on the Safety Officer to determine which signs are "needed."

Alef also cites a regulation that states, "Hazard warning signs are recommended where an immediate threat to visitor safety is identified." (Sleeping Bear Dunes Nat'l Lakeshore Sign Plan at 11, Def.'s Br. Supp. Ex. 1–E.) Again, in order to find a violation of this regulation, the Court would have to override the Government's judgment that the diving conditions posed no "immediate threat."

A final example is Alef's reliance on a regulation stating, "Whenever there is a hazard that might reasonably be expected to result in injury to Service personnel or the visiting public, signs warning of the hazard must be installed. The need for and the placement of this type of sign shall be carefully considered to ensure that persons who might be exposed to the hazard will be adequately warned . . . ." (NPS Sign Manual at 4–4, Def.'s Br. Supp. Ex. 1–A.) In order to find a violation of this regulation, the Court would first have to find that the DOI was negligent because its decision not to post a sign was an inadequate warning of a hazard with reasonably foreseeable injury potential. Such negligence determinations are irrelevant to the discretionary function inquiry.

*See Rosebush*, 119 F.3d at 444; *In re Ohio River Disaster Litig.*, 862 F.2d at 1247.

As in *Rosebush*, the relevant inquiry in this case is whether any regulation required the Government to post warning signs or patrol the area. *See* 119 F.3d at 442. The Government has submitted unrefuted evidence that all such decisions were discretionary. (*See* First Miller Aff. ¶¶ 7–10, Def.'s Br. Supp. Ex. 1.) Therefore, the Court finds that the Government's actions involved judgment or choice for purposes of the discretionary function exception.

**2. DOI Discretion**

The Court must next determine whether, as an objective matter, the Government's actions were susceptible to policy analysis. *See Gaubert*, 499 U.S. at 325, 111 S.Ct. at 1275. The Sixth Circuit has held that the following types of decisions are generally protected from tort liability by the discretionary function exception: (1) those "concerning the proper response to hazards"; (2) those concerning "whether and how to make federal lands safe for visitors"; and (3) those concerning "whether to warn of potential danger." *Rosebush*, 119 F.3d at 443; *cf. Davis v. United States*, 918 F.Supp. 368, 373 (N.D.Fla.1996) (holding that "decision whether and how to post warning signs . . . requires NPS to weigh a number of policy judgments. . . . Consequently, courts have recognized such decisions require NPS to weigh concerns of, inter alia, natural and historic preservation, public safety and budgetary constraints"). The Court finds that the alleged omissions at issue concerned the latter two categories.

Furthermore, the statute establishing the NPS directs the NPS to regulate the use of national parks in accordance with the fundamental purpose of "conserv[ing] the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations." 16 U.S.C. § 1. The Secretary of the DOI "shall administer and protect the Sleeping Bear Dunes National Lakeshore in a manner which provides for recreational opportunities

consistent with the maximum protection of the natural environment within the area." 16 U.S.C. § 460x(a). The Government has submitted unrefuted evidence that it made the decision not to post no-diving signs or patrol North Bar Lake in accordance with the foregoing statutorily mandated policy considerations.[1] (*See* Second Miller Aff. ¶ 4, Def.'s Reply Br. Ex. 10.) Therefore, this Court finds that the Government's actions were susceptible to policy analysis for purposes of the discretionary function exception.[2]

### Conclusion

For the foregoing reasons, the Court will grant the Government's motion to dismiss for lack of subject matter jurisdiction. The Court will dismiss this case in its entirety.

An Order consistent with this Opinion will be entered.

### ORDER

In accordance with the Opinion entered this date,

**IT IS HEREBY ORDERED** that Defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) (docket no. 15) is **GRANTED.** In his brief, Plaintiff intimated that he expected to amend his complaint to allege the breaches of mandatory policies which he argued in his brief. Even if this Court chose to construe such hints as a request for leave to file an amended complaint pursuant to Fed. R.Civ.P. 15(a), the Court would deny leave because any amendment would be futile in light of the facts and law. *See Frank v. D'Ambrosi*, 4 F.3d 1378, 1386 (6th Cir.1993). The Court notes also that as of the date of this Order, Alef has not filed the motion, supporting brief, and proposed amended complaint which he anticipated filing before this date. (*See* Pl.'s Br. Opp'n at 10.)

1. Before the Government submitted this evidence with its reply brief, Alef argued that since the Government had no evidence that it ever made an affirmative decision not to post signs or patrol, the Government was not entitled to the discretionary function exception. In light of the Second Miller Affidavit, the Court need not address Alef's argument. The Court notes only that the Sixth Circuit recently declined to decide this issue. *See Angle v. United States*, 89 F.3d 832 (6th Cir.1996) (noting that other circuits have

Therefore, this case is **DISMISSED** in its entirety.

held exception applicable even in absence of conscious choice but deciding case on other grounds).

2. The Court declines to adopt the analysis in *Summers v. United States*, 905 F.2d 1212 (9th Cir.1990), which Alef cites in his own support, because the Sixth Circuit has held that *Summers* is inconsistent with Sixth Circuit case law. *See Rosebush*, 119 F.3d at 444.