**Gary BUFFINGTON, Personal Representative of the Estate of Kurt A. Buffington, Deceased, Plaintiff,**

v.

**UNITED STATES of America (DEPARTMENT OF the ARMY—CORPS OF ENGINEERS), Defendant.**

No. 2:91–CV–319.

United States District Court, W.D. Michigan, S.D.

Nov. 20, 1992.

Steven L. Barney, Plunkett & Cooney, P.C., Petoskey, MI, for plaintiffs.

Stuart M. Gerson, U.S. Dept. of Justice, Civ. Div., Federal Programs Branch, Stephen C. Bransdorfer, Sarah Lenz Lock, U.S. Dept. of Justice, Torts Branch, Civ. Div., Washington, DC, and Glenda G. Gordon, Asst. U.S. Atty. and John A. Smietanka, U.S. Atty., Marquette, MI, for defendant.

### *OPINION GRANTING UNITED STATES' MOTION TO DISMISS*

HILLMAN, Senior District Judge.

On October 4, 1988, high winds and waves from Lake Superior crashed against a breakwater ("pier") operated by the United States Department of Army, Corps of Engineers [1] causing, according to plaintiff, unnatural and violent currents in the immediate vicinity.

On this day a young college student was on the pier watching the waves crash over. Suddenly and unexpectedly, he either fell or was swept into the water. A friend, Kurt Buffington, observing what happened, ran along the pier and jumped into the water in

---

1. The breakwall is the Presque Isle Harbor Breakwall in Marquette, Michigan. It was originally built pursuant to H.R.Doc. No. 318, 54th Cong., 1st Sess. (March 24, 1896) and Rivers and Harbor Acts (June 3, 1896).

an effort to rescue his friend. The effort failed. Both young men drowned.

The administrator of the Buffington estate has brought this action against the United States alleging in three counts: nuisance, public nuisance, and gross negligence and/or willful misconduct. All these counts are based on the allegations in paragraph 13 of the Complaint, which, in essence, charges that the Army Corps of Engineers failed to properly design, build and maintain the breakwater, thus creating a hazardous and unseen, unnatural undertow; further, that the Corps failed to eliminate this danger and finally the Corps failed to properly warn the public at large of the dangers and to provide appropriate safety devices.

The United States has moved for dismissal under Fed.R.Civ.P. 12(b)(1) and 12(b)(6), alleging that this court has no jurisdiction over the subject matter and that plaintiff has failed to state a claim upon which relief can be granted.

Oral argument on the motion was held in Marquette on October 27, 1992.

I am satisfied that under 28 U.S.C. § 2680(a) the Government is immune from liability for the acts and omissions complained of and that the Government's motion to dismiss must be granted.

At common law, the United States, its agencies and employees were exempt from suits brought by its citizens. However, in section 1346(b) of Title 28 of the United States Code, the Government partially waived its sovereign immunity from tort liability. That section provides:

> Subject to the provisions of chapter 171 of this title, the district court ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligence or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

But, an exception to this waiver is found in section 2680 of Chapter 171 of Title 28, which provides:

> The provisions of this chapter and section 1346(b) of this title shall not apply to—
>
> (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

Thus, the government's waiver of sovereign immunity in section 1346(b) does not apply when the challenged act or omission involves a discretionary function or duty. Indeed, "if a case falls within the statutory exceptions of 28 U.S.C. § 2680, the court lacks subject matter jurisdiction." *Feyers v. United States,* 749 F.2d 1222, 1225 (6th Cir. 1984), *cert. denied,* 471 U.S. 1125, 105 S.Ct. 2655, 86 L.Ed.2d 272 (1985).

In an effort to understand what is meant by a discretionary function, the first inquiry must be a review of how and under what circumstances the pier or breakwater is operated by the Corps of Engineers.

It is undisputed the Corps has very broad discretion in the running of its navigational civil works. Congress delegated to the Secretary of the Army the duty to prescribe regulations for the "use, administration, and navigation of the navigable waters of the United States *as in his judgment the public necessity may require for the protection of life and property,* or of operations of the United States in channel improvement." 33 U.S.C. § 1 (emphasis added). "Federal ... improvements of rivers, harbors, and other waterways shall be under the jurisdiction of and shall be prosecuted by the Department of the Army under the direction of the Secretary of the Army and the supervision of the Chief of Engineers." 33 U.S.C. § 540.

The Corps' decisions how to supervise and operate the breakwater, require the consideration of a myriad of public policy factors including purpose, cost, maintenance, staffing, access, feasibility, and aesthetics. The operation of the Corps' civil works projects such as the Upper Harbor Breakwall requires that the needs of navigation be balanced with other public interests, including recreational use of Corps property.

The U.S. Army Corps of Engineers has been involved in regulating certain activities in the nation's waters since 1890. Until 1968, the primary thrust of the Corps' regulatory program was the protection of navigation ... [T]he program has evolved to one involving the consideration of the full public interest by balancing the favorable impacts against the detrimental impacts.... The program is one which reflects the national concerns for both the protection and utilization of important resources.

33 C.F.R. 320.1 (1992).

These discretionary functions exercised by the Corps are not disputed by plaintiff. Rather, plaintiff argues there are "definite limits to the scope of the discretionary function." It should be noted that no claim is made by plaintiff that specific regulatory or statutory directives were in existence at the time of this accident which required government agents to take a particular course of action. *See, i.e.,* government directives requiring the following of a prescribed vaccine-approval procedure. *Berkovitz v. United States,* 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). Likewise, no claim is made that a mandatory, specific statute, regulation, or policy required the Corps to design a breakwall in some specific fashion to avoid hazardous, unnatural, unforeseen undertow conditions at or in close proximity to the pier.

In an attempt to define a discretionary act, little can be accomplished by a detailed analysis of the many conflicting cases decided prior to *United States v. Gaubert,* —— U.S. ——, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). *Gaubert* is the Supreme Court's most recent word on the subject and obviously sets the standard which this court must follow. In *Gaubert,* the Court put to an end the plan-

ning/operational distinction and found that "[a] discretionary . act is one that involves choice or judgment; *there is nothing in that description that refers exclusively to policy making or planning functions.... Discretionary conduct is not confined to the policy or planning level." Id.* at ——, 111 S.Ct. at 1275 (emphasis added). That case involved alleged wrongdoing by federal regulators working on a day-to-day basis at the Independent American Savings Association, a Texas-based thrift. The *Gaubert* Court held that the discretionary function exception protected all of the regulators' activities involving management of that thrift. The protection derived from the fact that their decisions required judgment and choice. In essence then, federal action is protected if the acting agents are empowered to exercise judgment and choice and if such choice is susceptible to public policy considerations.

Here the Corps' design, construction and maintenance of the pier clearly involved matters of choice that included social, economic and political policy decision making. Unquestionably, public policy is very much involved when the Corps makes decisions involving location, safety, purpose, cost, maintenance, access, comity, feasibility and aesthetics. The Corps must make these policy judgment calls regarding the operation of the breakwall by balancing the needs of navigation, which after all is the pier's primary purpose, with allowing recreational use by the public of the Corps' property. 33 C.F.R. 320.1. *See also, Fahl v. United States,* 792 F.Supp. 80, 81 (D.Ariz.1992).

Plaintiff specifically complains of a lack of warning by the Corps despite affidavit evidence that a conspicuous sign was in place on the day of the accident. The sign read as follows:

CAUTION

This Structure Protects Navigation
Insure Your Safety—Use With Caution
KEEP OFF DURING STORMS
OR HIGH SEAS

Corps of Engineers US ARMY
Detroit District

The type of sign, its size, its wording, and its location are obviously subject to discre-

tionary decisions and without doubt susceptible to public policy considerations. Second-guessing the Corps on the appropriateness of the sign is not actionable.

For the reasons stated, the United States' motion to dismiss for lack of jurisdiction is granted, and the action is dismissed with prejudice.