Melvin H. MANNS, Plaintiff,

v.

UNITED STATES of America and Michael R. Manns, Defendants.

UNITED STATES of America, Third–Party Plaintiff,

v.

PC OR 936TU, her engines, anchors, engines, furniture, appurtenances, etc., in rem, Third–Party Defendant.

No. CV 95–593–RE.

United States District Court, D. Oregon.

Feb. 13, 1996.

Kristine Olsen, United States Attorney, District of Oregon, R. Michael Underhill and Stephen Flynn, Torts Branch, Civil Division, U.S. Department of Justice, San Francisco, California, for the United States.

Mark H. Wagner, Hoffman, Hart & Wagner, Portland, Oregon, for Michael Manns.

## OPINION

REDDEN, District Judge:

Defendant, United States of America, moves to dismiss the action against it based upon the discretionary function exception to tort liability. Oral argument was held on February 5, 1996. For the reasons stated below, the motion is granted.

## FACTS

On the morning of August 27, 1994, in the vicinity of Daymark 15 (located south of Government Island on the Columbia River), plaintiff Melvin Manns was a passenger in a pleasure craft owned and operated by his brother, defendant Michael Manns. Plaintiff alleges that the boat hit a sandbar (shoal), throwing him from the boat, which then hit him in the head. Plaintiff was sitting on the bow and defendant Michael Manns was operating the boat at the time.

The navigation chart for the area of the accident notes that the area is "unstable and subject to shoaling." The United States Coast Guard (Coast Guard) had issued a Local Notice to Mariners warning of the unstable channel and shoaling and urging mariners to "navigate with extreme caution[.]" The Coast Guard also posted, at Daymarks 9 and 11, signs reading:

UNSTABLE

CHANNEL

DANGER

SHOAL AREA INSIDE

CHANNEL LIMITS

USE

CAUTION

Daymarks are located approximately one-half miles apart in the area.

Bernard Jolles and Rick Klingbeil, Jolles, Bernstein & Garone, Portland, Oregon, for Melvin Manns.

Defendant Manns did not have a copy of the chart and had never reviewed it. While he could not recall seeing the signs at Daymarks 9 and 11, defendant Manns had boated in the area hundreds of times.

The United States Army Corps of Engineers (Corps of Engineers) is responsible for dredging and waterway maintenance operations on the Columbia River. The Coast Guard is responsible for Daymarks and warning signs.

## STANDARD

The United States' motion is styled a motion to dismiss but relies upon affidavits and evidence outside of the pleadings. I treat the motion as a motion for summary judgment. Plaintiff does not contend that repleading could resolve the issue of the discretionary function defense.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The materiality of a fact is determined by the substantive law on the issue. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assn*, 809 F.2d 626, 630 (9th Cir.1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). If the moving party shows the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and identify those facts which show a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *T.W. Electrical*, 809 F.2d at 630.

There is no subject matter jurisdiction here if the government's actions were discretionary functions or duties. *See* 28 U.S.C. § 2680.

■ To determine whether the discretionary function exception to tort liability applies, the court must determine: 1) whether the government's act involved an element of judgment or choice; and 2) whether the act was based upon considerations of public policy, such as the economic, social and political considerations. *United States v. Gaubert*, 499 U.S. 315, 322–23, 111 S.Ct. 1267, 1273–74, 113 L.Ed.2d 335 (1991). It is the government's burden to prove that each of the alleged negligent acts meets the two criteria. *Kennewick Irrigation District v. United States*, 880 F.2d 1018, 1025 (9th Cir.1989); *Prescott v. United States*, 973 F.2d 696, 701 (9th Cir.1992).

## DISCUSSION

In the pretrial order, plaintiff alleges that the United States was negligent in:

1) failing to properly mark the area where the boat was being operated to warn members of the public that it was not safe for boat traffic;

2) failing to inspect the area where the accident occurred to determine whether it was safe for boat traffic;

3) failing to dredge the channel to a sufficient depth to enable pleasure boats to safely traverse the channel in the area where the accident occurred; and

4) marking the area where the accident occurred as being safe for boating and free of danger.

The government argues that these claims are barred by the discretionary function doctrine.

Preliminarily, plaintiff argues that this case is similar to and controlled by the Supreme Court's decision in *Indian Towing Co.*

*v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955). Plaintiff says that *Indian Towing* holds that when the government has undertaken to mark a channel, it becomes obligated to use reasonable care to discover and warn of dangerous conditions. Plaintiff seeks to draw a line between the discretionary decision to dredge or mark a hazard and the non-discretionary maintenance of the dredging or marking.

Plaintiff's reliance on *Indian Towing* is misplaced. Both the Supreme Court and the Ninth Circuit have stated that *Indian Towing* did not involve the discretionary function exception. The government in that case conceded that the exception did not apply. *United States v. Varig Airlines,* 467 U.S. 797, 812, 104 S.Ct. 2755, 2763–64, 81 L.Ed.2d 660 (1984); *Kennewick,* 880 F.2d at 1023.

Second, the case law does not support plaintiff's contention that there is a difference between the government's decisions to embark on a project (e.g. dredging or marking) and maintaining the project once underway. The Ninth Circuit analyzed this distinction and concluded, "a matter does not fall outside the discretionary function exception merely because the decision to embark on an activity has already been made." *Kennewick,* 880 F.2d at 1024–25.

*Indian Towing* does not control and the proper inquiry is whether each of the alleged acts of negligence fit the two-step analysis of *Gaubert.*

### I. Element of Judgment or Choice

■ There is no element of judgment or choice if a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow because the employee has no rightful option but to adhere to the directive." *Gaubert,* 499 U.S. at 322, 111 S.Ct. at 1273 (internal quotations omitted).

■ The Corps of Engineers' responsibility in this case relates to inspection and dredging.

Under 33 U.S.C. § 1, the Secretary of the Army (overseer of the Corps of Engineers) may prescribe regulations for the "use, administration, and navigation of the navigable waters of the United States as in his judg-

ment and public necessity may require for the protection of life and property, or of operations of the United States in channel improvement."

The Corps of Engineers' board

shall submit to the Chief of Engineers recommendations as to the desirability of **commencing or continuing any and all improvements upon which reports are required. And in the consideration of such works and projects the board shall have in view the amount and character of commerce existing or reasonably prospective which will be benefitted by the improvement, and the relation of the ultimate cost of such work, both as to cost of construction and maintenance, to the public commercial interest involved, and the public necessity for the work and propriety of its construction, continuance, or maintenance** at the expense of the United States.

33 U.S.C. § 541 (emphasis added).

The regulatory approach of the Corps of Engineers "involv[es] the consideration of the full public interest by balancing the favorable impacts against the detrimental impacts." 33 C.F.R. § 320.1.

In *Buffington v. United States,* 820 F.Supp. 333 (W.D.Mich.1992), the court cited 33 U.S.C. § 1 and concluded that the Corps of Engineers has "very broad discretion in running ... its navigational civil works." *Id.* at 334. It also concluded that the Corps of Engineers' supervision and operation of a breakwater required "the consideration of a myriad of public policy factors including purpose, cost, maintenance, staffing, access, feasibility, and aesthetics." *Id.* at 335 (citing 33 C.F.R. § 320.1).

These statutes confer discretion on the Corps of Engineers in determining whether to commence or continue projects such as the dredging at issue in this case. They are not limited, as plaintiff contends, to conferring discretion on the decision to undertake a project alone. *See* 33 U.S.C. § 541 (referring to "commencing or continuing any and all improvements;" "construction and maintenance;" and "construction, continuance or maintenance."). These decisions allow judg-

ment or choice at all stages of project operation.

Plaintiff contends that the Corps of Engineers' *Dredging Policies and Practices* manual requires inspections of dredging operations and that violation of this mandate is not discretionary.

However, according to the declaration of Stephen Perkins, the Acting Chief of Waterways Maintenance Section for the Portland Army Corps of Engineers, the Corps of Engineers inspects projects through hydrographic surveys. Such surveys are to be conducted annually. The area of Daymark 15 was surveyed on August 30, 1993, one year before the accident, and on March 16, 1994, less than six months before the accident. Thus, the surveys were carried out and the manual was followed.

Plaintiff is unable to point to any other mandatory directive for the Corps of Engineers (or the Coast Guard). This fact distinguishes this case from those cited by plaintiff which found that the government agency violated one of its mandatory directives. *See Summers v. United States*, 905 F.2d 1212, 1214 (9th Cir.1990) (agency required to correct a hazard once identified); *Faber v. United States*, 56 F.3d 1122, 1126 (9th Cir.1995) (agency policy required implementation of safety measures to warn of known safety hazards); *Sutton v. Earles*, 26 F.3d 903, 909 (9th Cir.1994) (requiring plaintiff to show that the government violated a "specific mandatory" requirement); *ARA Leisure Services v. United States*, 831 F.2d 193, 195–196 (9th Cir.1987) (government standards required road to be maintained to conform to original grades and alignments).

The Corps of Engineers' decisions regarding inspection and dredging involved an element of judgment and meet the first prong of the test.

■ The Coast Guard, which allegedly failed to mark and improperly marked the area, also has substantial discretion in marking.

Under 14 U.S.C. § 81, "to aid navigation and to prevent disaster, collisions, and wrecks," the Coast Guard "may establish, maintain, and operate ... aids to maritime navigation[.]" And, under 14 U.S.C. § 86, the Secretary of Transportation "may mark for the protection of navigation any ... obstruction existing on any navigable waters ... of the United States in such a manner and for so long as, in his judgment, the needs of maritime navigation require."

Plaintiff contends that 14 U.S.C. § 86 applies to obstructions not created by the government. That argument is refuted by *Sutton*, which noted that the Coast Guard has discretion in marking obstructions, whether placed by the government or private entities. *Sutton*, 26 F.3d at 911.

Plaintiff is unable to point to any mandatory directive regarding markings. The discretion conferred by statute to the Coast Guard in marking hazards contains the necessary element of judgment.

The first prong of the test is met for both agencies.

## II. Policy Considerations

The second part of the test is whether the government's act was based upon considerations of public policy, such as the economic, social and political considerations.

■ *Gaubert* holds that when a statute, regulation or agency guideline expressly or impliedly allows a government agent to exercise discretion, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324, 111 S.Ct. at 1274. Given the discretion conferred upon both the Corps of Engineers and the Coast Guard there is a presumption that this portion of the test is met.

■ As quoted above, 33 U.S.C. § 541 and 33 C.F.R. § 320.1, describe policy considerations that the Corps of Engineers engages in when constructing, maintaining, and continuing projects, including dredging. These are: the amount and character of commerce to be benefitted, relation of the ultimate cost to the public interest, public necessity for the work, propriety at the expense of the United States, and the balancing of favorable and detrimental aspects. These are policy considerations. *See Buffington*, 820 F.Supp. at 335.

**1354**

Stephen Perkins also states that these policy considerations are balanced by the Corps of Engineers in determining whether to dredge. They consider commercial, safety, social and environmental uses and impacts in ranking dredging projects. High level commercial uses are level one; other coastal projects involving mixed commercial and fishing uses are level two; and purely recreational projects (such as the dredging at issue here) are level three. Generally, funding is allocated to level one projects first. Many level two and all level three projects have generally not been funded.

Plaintiff contends that an inability to fund does not involve a policy consideration. *See ARA Leisure,* 831 F.2d at 195–196 (budget considerations alone do not constitute policy considerations). However, funding is only one consideration that the Corps of Engineers uses in determining which projects to commence and maintain.

The evidence is sufficient to hold that the Corps of Engineers' actions with regard to inspection and dredging were based upon policy considerations:

█ The question as to the Coast Guard is closer. Plaintiff argues that the Coast Guard has presented no evidence establishing that it actually took policy considerations into account in making its decisions. Under *Gaubert,* however, "the focus of the inquiry is not on the agent's subjective intent ... but on the nature of the actions taken and on whether they are **susceptible of policy analysis.**" *Gaubert,* 499 U.S. at 325, 111 S.Ct. at 1275 (emphasis added).

█ There is also a "strong presumption," *id.* at 324, 111 S.Ct. at 1274–75, that its actions were based upon policy considerations because the Coast Guard has statutory discretion (Coast Guard "may" mark obstructions). This presumption is bolstered by the Ninth Circuit's *dicta* in *Sutton,*

Congress has granted the Coast Guard broad authority to scan the navigable waters of the United States and to mark **any** obstruction to make those waters safer for navigation, regardless of whether that obstruction was placed by the United States, or was placed by private entities. Whether or not to expend limited resources to mark any given obstruction to alleviate the particular level of risk associated with the obstruction may well be a decision grounded in social, economic and political policy that Congress intended to shield from liability with the discretionary function exception.

*Sutton,* 26 F.3d at 911.

Here, the Coast Guard is accused of negligent marking of the shoal. The Coast Guard placed signs at Daymarks 9 and 11, but apparently not at Daymark 15 where the accident occurred.

The court in *Buffington* concluded that it was inappropriate to second-guess the agency's decisions about warning signs when the agency has discretion. *Buffington,* 820 F.Supp. at 335–336. "The type of sign, its size, its wording, and its location are obviously subject to discretionary decisions and without doubt susceptible to public policy considerations." *Id.* at 336.

Plaintiff argues that *Buffington* is contrary to *ARA Leisure, Sutton,* and *Faber.* It is not. In each of those cases, the courts found that the agency had a specific, mandatory directive that required agency action, and there were no grounds for the agency to make policy decisions. In this case, as in *Buffington,* Congress conferred discretion on the agencies. Once that discretion is conferred, a presumption arises that the agency exercised its discretion in consideration of public policy.

**CONCLUSION**

The United States has carried its burden of proving that the Corps of Engineers' and the Coast Guard's acts each involved an element of judgment or choice and was based upon policy considerations. The government meets the discretionary function exception and its motion is granted.