Raphael DEMERY, Plaintiff,

v.

**UNITED STATES DEPARTMENT of the INTERIOR, and the Bureau of Indian Affairs, Defendant.**

No. A4–01–117.

United States District Court,
D. North Dakota,
Northwestern Division.

Feb. 20, 2003.

Debra L. Hoffarth, Pringle & Herigstad, P.C., Minot, ND, for plaintiff.

David L. Peterson, Lance Daryl Schreiner, Tracy Vigness Kolb, Zuger Kirmis & Smith, Bismarck, ND, for defendant.

## MEMORANDUM AND ORDER

HOVLAND, Chief Judge.

The plaintiff, Raphael Demery, brought this action against the United States Department of the Interior [hereinafter referred to as DOI] pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b) for the wrongful death of his wife, Linda Demery. He seeks to recover damages from the DOI, attributing his wife's death to the negligence of Bureau of Indian Affairs [hereinafter referred to as BIA]. For the purposes of this action, the Department of the Interior and the Bureau of Indian Affairs are one-in-the-same. The DOI filed a motion for dismissal pursuant to Rule 56 of the Federal Rules of Civil Procedure, asserting that it is immune from suit under the discretionary function exception to the Federal Tort Claims Act. For reasons outlined below, the Court grants the motion.

## I. BACKGROUND OF THE CASE

The BIA operated an aeration system on Belcourt Lake during the winter months of 1998 and 1999 that kept a portion of the lake from freezing over. It erected signs at two entrances to the lake that warned "Danger, open water." It built a berm of snow around the open water. It also marked the open water with lath, red flags, and reflector tape. The flags, which were approximately 10 inches square and stapled to lath approximately 3½ to 4 feet in length, were placed between 30 and 50 feet apart. The actual number of flags that were placed on the lake is unclear.

A snowmobile trail was constructed in 1999 that crossed a portion of Belcourt Lake. Estimates placed the trail approximately 100 feet west of the lake's open water. BIA personnel were aware of the trail's existence but were not responsible for its maintenance.

On March 7, 1999, Linda Demery drowned after a snowmobile on which she was a passenger drove into the open water on Belcourt Lake. Linda's husband, Raphael Demery [hereinafter referred to as Demery], filed a wrongful death claim pursuant to the Federal Tort Claims Act [hereinafter referred to as FTCA] with the BIA on March 5, 2001. His claim was subsequently referred to the DOI, which, in a letter-opinion dated October 17, 2001, denied the claim on the grounds that Demery had failed to establish a cognizable claim under the FTCA.

On November 21, 2001, Demery filed an FTCA claim with this Court, alleging Linda's accident was caused by the BIA's failure to properly mark and warn the public of the dangers posed by open water on Belcourt Lake. The DOI filed a motion for dismissal on November 8, 2002, asserting that it is immune from suit under the discretionary function exception to the FTCA. In his response dated December 23, 2002, Demery claims that the DOI's motion is untimely under the Court's Scheduling Order of March 22, 2002, and that the discretionary function exception is inapplicable to the facts of this case. The DOI filed a reply in support of its motion on January 9, 2003.

## II. STANDARD OF REVIEW

The Court will grant a motion for summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (explaining that the Court must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor). If the defendant can show that there is no issue as to any material fact, then the plaintiff must "set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e); see also *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. A mere trace of evidence supporting the plaintiff's position is insufficient—the facts must generate evidence from which a jury could reasonably find for the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. LEGAL DISCUSSION

It is apparent from the record that Demery has exhausted his administrative remedies, a prerequisite to filing an FTCA claim in federal court. See 28 U.S.C. § 2825(a). Before determining whether the discretionary function exception is applicable, the Court must first address Demery's contention that the DOI's motion is untimely.

### A) TIMELINESS OF THE DOI'S MOTION

■ The Court's Scheduling Order instructed the parties to file threshold mo-

tions by October 1, 2002. Demery asserts that the DOI's motion should be denied because it raises a threshold issue and was filed after October 1. The DOI acknowledges that its motion challenges jurisdiction, a threshold issue, but maintains that it should not be precluded from making such a challenge. The Court agrees.

It is axiomatic that the parties cannot confer jurisdiction on a federal court that has not been vested in that court by the Constitution and Congress.[1] "This means that the parties cannot waive lack of jurisdiction by express consent, or by conduct, or even by estoppel; the subject matter jurisdiction of the federal courts is too basic a concern to the judicial system to be left to the whims and tactical concerns of the litigants." 13 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3522, at 68–69 (1984); see e.g., *Sosna v. Iowa*, 419 U.S. 393, 398, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) (may not by stipulation invoke the judicial power of the United States in litigation which does not present an actual case or controversy); *Williams v. Rogers*, 449 F.2d 513, 518 (8th Cir.1971) (parties cannot waive lack of subject matter jurisdiction whether by express consent or by conduct); *Macdiarmid v. Lawbar Petroleum*, 456 F.Supp. 503, 504 (W.D.Tex.1978) (a party will not be estopped from challenging the existence of federal jurisdiction).

The DOI's compliance with the Scheduling Order or lack thereof is not dispositive in this instance. Although it is preferred that the parties, in the interests of judicial economy, address jurisdictional issues early in the proceedings, they are not necessarily precluded from challenging the existence of federal jurisdiction later in the proceedings by virtue of the Scheduling Order. The discretionary function exception raised by the DOI in its summary

judgment motion is a jurisdictional defense. See *Johnson v. U.S., Dept. of Interior*, 949 F.2d 332, 335 (10th Cir.1991). As the Court cannot proceed unless it has jurisdiction, it must review the DOI's motion on its merits.

## B) DISCRETIONARY FUNCTION EXCEPTION

■ It is well-established that Congress has waived the sovereign immunity of the United States by giving district courts jurisdiction over certain tort actions. 28 U.S.C. & sect; 1346(b). However, Congress has excepted from this limited waiver "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). If a case falls within this statutory exception to the Federal Tort Claims Act, the Court lacks subject matter jurisdiction. See *Feyers v. United States*, 749 F.2d 1222, 1225 (6th Cir.1984) *cert. denied*, 471 U.S. 1125, 105 S.Ct. 2655 (1985).

■ "Though discretionary function is a difficult concept to specifically define, the Supreme Court has stated that it includes initiation of programs and activities as well as determinations made by executives or administrators in establishing plans, specifications or schedules of operations." *E. Ritter & Co. v. Department of Army, Corps of Engineers*, 874 F.2d 1236, 1240 (8th Cir.1989). The discretionary function exception prohibits any claim against the United States that is based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused. 28

---

1. There is an exception to this rule in instances where a state has consented to suit in federal court and has waived protection afforded to it by the Eleventh Amendment.

U.S.C. § 2680(a)). It "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *Dykstra v. U.S Bureau of Prisons,* 140 F.3d 791, 795 (8th Cir.1998). Its purpose is to prevent "judicial second-guessing of legislative and administrative decisions grounded in social, economic, and policy through the medium of an action in tort." *United States v. Gaubert,* 499 U.S. 315, 323, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). When properly construed, it "protects only governmental actions and decisions based on considerations of public policy." *Id.* See *Kane v. U.S.,* 15 F.3d 87, 89 (8th Cir.1994) (day-day decisions, made in furtherance of the policy, may be protected under the exception). Its application is, therefore, a jurisdictional issue which precedes any negligence analysis. *Johnson v. U.S., Dept. of Interior,* 949 F.2d 332, 335

■■■ The applicability of the discretionary function exception is governed by the nature of the conduct at issue, rather than the status of the actor. *Berkovitz v. U.S.,* 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). When examining the nature of the challenged conduct, the Court must first inquire as to whether the action is a matter of choice for the acting Government employee. Assuming that the challenged conduct does involve an element of judgment or choice, the Court must then determine whether that judgment "is of the kind that the discretionary function exception was designed to shield." *Id.*

1) WHETHER THE ACTION IS A MATTER OF JUDGMENT OR CHOICE FOR THE ACTING EMPLOYEE.

The United States Supreme Court has articulated a two-part test to be applied in determining whether a particular claim falls under the discretionary function exception to the waiver of sovereign immunity. See *United States v. Gaubert,* 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *Berkovitz by Berkovitz v. United States,* 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). The first part of the test requires a determination of whether the challenged act or omission violated a mandatory regulation or policy that allowed no judgment or choice. If so, the discretionary function exception does not apply because there was no element of judgment or choice in the conduct at issue. *United States v. Gaubert,* 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335. The Supreme Court has recognized that the requirement of judgment or choice is not satisfied if there is a statute, rule, regulation or administrative policy that specifically prescribes a course of action for an employee to follow.

However, if the challenged conduct is determined to be discretionary, the second part of the Gaubert test is to determine whether the conduct is "of the kind that the discretionary function exception was designed to shield." *Gaubert,* 499 U.S. 315, 322–323, 111 S.Ct. 1267. As previously noted, when Congress enacted the Federal Tort Claims Act, its desire was to prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy. In other words, where there is room for policy judgment and decision, there is discretion of the sort protected by the Federal Tort Claims Act.

■■ The Court's initial inquiry concerning whether the action is a matter of judgment or choice for the acting Government employee is mandated by the language of the discretionary function exception. *Ber-*

kovitz v. U.S., 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). "[C]onduct cannot be discretionary unless it involves an element of judgment or choice." *Id.* Thus, when a federal statute, rule, regulation, or policy specifically prescribes a course of action for an employee to follow, the exception will not apply. *Id.* Conversely, when no federal mandate is found, the employee's conduct is considered to be the product of judgment or choice and the Court's initial inquiry is satisfied.

The Government action at issue here is the BIA's operation of an aeration system on Belcourt Lake and the BIA's alleged failure to adequately mark and warn the public of open water created by the aeration system. It is undisputed that there is no federal mandate with respect to the BIA's operation of the aeration system on Belcourt Lake. There are no statutes, rules, regulations, or administrative policies requiring the BIA to aerate the lake or which specify in any manner when, where, how, or why the lake is to be aerated. There are no statutes, rules, regulations, or policies requiring the BIA to warn the public of the open waters created by the aeration system. The record also reveals that there were no established policies to guide BIA personnel responsible for marking the open water on Belcourt Lake or to dictate whether any warning signs were needed or the types of warnings required. The relevant inquiry is whether there are any statutes, rules, regulations, or administrative policies which address the BIA's operation of an aeration system or which required warnings in any specific manner. If not, the BIA's decision to aerate the lake, and whether to provide warnings to the public, would fall within the discretionary function exemption to the government's tort liability. See *Childers v. United States*, 40 F.3d 973, 976 (9th Cir.1994).

More important, Demery has acknowledged in his response that the BIA's decision to aerate the and maintain lake, as well as the marking and warning system employed, are discretionary decisions under the first part of the Gaubert analysis. See Plaintiff's Brief in Opposition Summary Judgment, p. 5–6. In summary, the allegedly tortious conduct of the BIA in this case clearly involved a discretionary function or action for which there is no dispute between the parties. The first part of the Gaubert test clearly shows that the challenged conduct was discretionary because there was an element of judgment or choice. Therefore, the Court must next turn to the second part of the Gaubert test to determine whether the conduct of the BIA—including the decision to warn and decisions as to the type of warnings to be conveyed to the public—is the sort of conduct which the discretionary function exception was designed to shield.

2) WHETHER THE CONDUCT "IS OF THE KIND THAT THE DISCRETIONARY FUNCTION EXCEPTION WAS DESIGNED TO SHIELD."

As previously noted, because the BIA's challenged conduct clearly involved an element of judgment or choice, the Court must next ascertain whether that judgment "is of the kind that the discretionary function exception was designed to shield." *Berkovitz v. U.S.*, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531. The only types of judgments that the discretionary function exception was designed to shield are "governmental actions and decisions based on considerations of public policy." *Gaubert*, 499 U.S. 315, 323, 111 S.Ct. 1267 (1991); see *Rosebush v. U.S.*, 119 F.3d 438, 444 (6th Cir.1997) (explaining that the requirement for a policy nexus is an objective not a subjective one). The Court must determine whether the adjudication

of Demery's claim would require it to second-guess a governmental policy decision. *Id.*

At one end of the spectrum are those agency decisions outside the sphere of policy analysis where the discretionary function exception provides no defense to liability. For example, the exception would not apply in instances where a government official causes an accident due to his negligent driving. *U.S. v. Gaubert,* 499 U.S. 315, n. 7, 111 S.Ct. 1267. "Although driving requires the constant exercise of discretion, the official's decision in exercising that discretion can hardly be said to be grounded in regulatory policy." *Id.* In other words, the discretion exercised by a government official who was driving in a negligent manner is not the type of judgment that the discretionary exception function is intended to protect.

At the other end of the spectrum are those agency decisions where the exercise of judgment or choice is directly related to the furtherance of the agency's policy goals. Examples of such an exercise of judgment include the regulation of S & L's by the Federal Home Loan Bank Board, *Gaubert v. U.S.,* 499 U.S. 315, 332, 111 S.Ct. 1267 (1991), and the release of vaccine lots by the Food and Drug Administration, *Berkovitz v. U.S.,* 486 U.S. 531, 544–48, 108 S.Ct. 1954. These are the types of decisions that Congress empowered agencies to make and to which the discretionary function exception shields from liability.

 It is well-established that decisions concerning the proper response to hazards are decisions protected from tort liability by the discretionary function exception. *Lockett v. United States,* 938 F.2d 630, 639 (6th Cir.1991)(proper response to the discovery of PCB's in a residential area, including not making any response at all, is within the discretionary

function exception); *Myslakowski v. United States,* 806 F.2d 94, 97 (6th Cir.1986)(decision how or whether to warn the public that government Jeeps for sale to the public might be susceptible to roll-over is a discretionary function). Decisions on whether and how to make federal land safe for visitors also require making policy judgments which are protected by the discretionary function exception. See *Autery v. United States,* 992 F.2d 1523 (11th Cir. 1993); *Bowman v. United States,* 820 F.2d 1393, 1395 (4th Cir.1987). More important, courts have recognized that the decision whether to warn of a potential danger is a protected discretionary function. See *Graves v. United States,* 872 F.2d 133, 137 (6th Cir.1989)(failure to warn of dangers on a dam over which a motor boat plunged was within the discretionary function exception); *Childers v. United States,* 40 F.3d 973, 976 (9th Cir.1994)(decisions concerning the manner and types of warnings to be placed on hiking trails in Yellowstone National Park were discretionary decisions barring suit by a family of an 11–year old boy who slipped on the ice and fell to his death); *Kiehn v. United States,* 984 F.2d 1100, 1106 (10th Cir.1993)(decision on whether to warn of dangers of rock climbing a discretionary function); *Layton v. United States,* 984 F.2d 1496, 1502 (8th Cir.1993)(Forest Service's failure to warn a tree cutting contractor concerning the hazards in cutting trees was protected by the discretionary function exception).

In this case, the question is where the case falls along the spectrum. According to the DOI, the BIA's decisions on how best to warn the public of the open waters on Belcourt Lake are the type of decisions the discretionary function exception was designed to shield. Demery contends that the BIA had a duty to use due care to properly warn people of the open water on Belcourt Lake and that the manner in

which the BIA chose to perform this duty is not the type of policy decision that the discretionary function exception was intended to protect. In support of this position, Demery relies upon the holdings in *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), and *Aslakson v. United States*, 790 F.2d 688, 694 (8th Cir.1986).

In *Indian Towing Co. v. United States* the plaintiff filed an FTCA claim against the Government alleging that the Coast Guard was negligent in its maintenance of a lighthouse. 350 U.S. 61, 62, 76 S.Ct. 122, 100 L.Ed. 48 (1955). The Supreme Court held that the Coast Guard, by exercising its discretion to operate the lighthouse and thereby engendering reliance on the light it produced, was obligated to use due care to keep the lighthouse in good working order or give warning when it was not functioning. 350 U.S. 61, 69, 76 S.Ct. 122. The Court concluded that the Government would be liable under the FTCA if the Coast Guard failed in its duty and damage was caused to the plaintiff.

In *Aslakson v. United States* the plaintiff filed an FTCA claim against the Government alleging that his son had died as a result of the Western Area Power Administration's (WAPA) failure to elevate its power lines for safety reasons. The Government, invoking the discretionary function exception to the FTCA, asserted that it was immune from suit. The Eighth Circuit disagreed and held that a governmental agency could be held responsible for compliance with its own safety policies without undermining its governmental function. 790 F.2d 688, 691. In Aslakson, the court found that WAPA had violated prescribed standards of the National Electric Safety Code as well as WAPA's own internal policies.

This case is distinguishable from both Indian Towing and Aslakson. In Indian Towing, the discretionary function exception was not at issue because the Government had conceded that the exception did not apply. In Aslakson, the defendant (WAPA) had violated both National Electric Safety Code standards and its own policies which required WAPA to elevate its power lines. In this case, there are simply no statutes, rules, regulations, or policies of any sort that prescribe any specific conduct or actions on the BIA.

 The Court concludes as a matter of law that the manner in which the BIA marked the open water on Belcourt Lake is susceptible to policy analysis and public policy considerations. Such decisions implicate competing concerns of safety, cost, and the furtherance of the underlying agency objectives. The types of markings, their size, and their placement and location on the lake are obviously subject to discretionary decisions and implicate public policy considerations. See *Buffington v. U.S.*, 820 F.Supp. 333, 335–36 (W.D.Mich.1992) (concluding that considerations of public policy were involved in the Corps of Engineers' design, construction and maintenance of breakwater and warning signs). The United States Supreme Court has made it clear that the focus of the inquiry is whether the challenged actions are "susceptible to policy analysis" and not whether they were, in fact, the result of a policy analysis. *Gaubert*, 499 U.S. 315, 324–325, 111 S.Ct. 1267. See *Hughes v. United States*, 110 F.3d 765 (11th Cir.1997). The Supreme Court has also recognized that when established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. See *U.S. v. Gaubert*, 499 U.S. 315, 325, 111 S.Ct. 1267 (1991); *Chantal v. U.S.*, 104 F.3d 207,

212 (8th Cir.1997); *Appley Bros. v. U.S.*, 7 F.3d 720, 726 (8th Cir.1993).

The Eighth Circuit's analysis in *Jurzec v. American Motors Corp.*, 856 F.2d 1116 (8th Cir.1988), is instructive. In Jurzec the plaintiff filed an FTCA claim against the Government challenging the adequacy of warnings given to purchasers of used jeeps formerly owned by the United States Postal Service. The warnings at issue consisted of statements in the contract, the operator's manual, and a label on the dash informing purchasers of the jeeps' propensity to rollover. The Eighth Circuit concluded that the Government was entitled to summary judgment because its conduct fell within the discretionary function exception. It explained as follows:

> The appellant mistakenly assumes that the Postal Service could have only considered public safety. The Postal Service may have also considered other economic and political public policy considerations. Secondly, assuming but not deciding, that the appellant is correct in that the Postal Service was directed to account for public safety when it determined the nature and content of the warning, the instant warning sufficiently operated to serve that purpose. If the warning operated to serve public safety, all that remains are matters of particular language, color, and the size of the warning. All these matters are clearly within the discretion of the Postal Service.

856 F.2d 1116, 1119. It went on to distinguish the facts presently before it from the facts in *Asklason v. United States.*

> WAPA's policy clearly required it to elevate its power lines if safety considerations compelled such action. Because of this requirement, WAPA officials had no opportunity to consider competing public policy considerations. In the instant case, the appellant, on the other hand, provides no evidence that the Postal Service officials were directed by the decision to warn to take specific action regarding the nature and content of the warning.

*Id.*

The Sixth Circuit's analysis in *Rosebush v. U.S.*, 119 F.3d 438, 442 (6th Cir.1997), is also instructive. In Rosebush the plaintiffs filed an FTCA claim against United States Forest Service in an effort to recover damages for injuries suffered by their sixteen-month old daughter when she fell into a fire pit at a Government campground. The plaintiffs alleged that the Forest Service was negligent in that it failed to make the fire pit safe for unsupervised toddlers, and failed to warn of the dangers of the fire pit. The Sixth Circuit held that the Government decisions regarding the maintenance of the fire pits and whether to warn of their dangers fell within the discretionary function exception to the FTCA's waiver of sovereign immunity. *Rosebush v. U.S.*, 119 F.3d 438, 444. The Sixth Circuit held that, "Decisions concerning the proper response to hazards are protected from tort liability by the discretionary function exception." 119 F.3d 438, 443. It also stated that the "decision whether to warn of potential danger is a protected discretionary function." *Id.*

Based on the above reasoning, the Court concludes as a matter of law that the BIA's challenged conduct in this case is the type of conduct that the discretionary function was designed to protect. It is not the total lack of any warning signs or markers on the lake that is at issue in this case, but instead the sufficiency of such markings and warnings. Demery has challenged the discretionary decisions and choices made by BIA personnel. While the Court does not necessarily endorse the decisions made by the BIA, it concludes

that such decisions are the type that Congress intended to immunize from suit. The fact that BIA officials may not have properly evaluated some or all of the dangers associated with the open water on Belcourt Lake, or given little thought to the need for warnings or the type of warning signs that should be placed near the open waters to warn the public, is not to say the considerations unaddressed are outside the ambit of the discretionary judgment exception and provide a basis for establishing tort liability. Even the negligent failure to consider all relevant aspects of the subject matter under consideration, or an abuse of discretion by a government employee, does not vitiate the discretionary character of the decisions made. To conclude otherwise would be to engage in the type of "judicial second-guessing" that the discretionary function exemption was designed to avoid.

## IV. CONCLUSION

The management and operational decisions of the BIA relative to the aeration system on Belcourt Lake, including the decision to aerate the lake, the design of the aeration system, whether to warn of the dangers of open water on the lake attributable to the aeration system, and the types of markings and warnings as well as the effectiveness of various types of warnings, are within the discretionary function exception to the Federal Tort Claims Act's waiver of sovereign immunity.

The motion for summary judgment of dismissal (Docket No. 18) is GRANTED and Demery's complaint is DISMISSED for lack of subject matter jurisdiction.

SO ORDERED.