RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 12a0387p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

DEBRA R. KOHL,

　　　　　　*Plaintiff-Appellant*,

　　*v.*

UNITED STATES OF AMERICA,

　　　　　　*Defendant-Appellee.*

No. 11-6213

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:09-cv-1190—Juliet E. Griffin, U.S. Magistrate Judge.

Argued: October 5, 2012

Decided and Filed:  November 16, 2012

Before:  MERRITT, MOORE, and McKEAGUE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Brandon E. Bass, LAW OFFICES OF JOHN DAY, P.C., Brentwood, Tennessee, for Appellant.  Jeffrey E. Sandberg, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Brandon E. Bass, John A. Day, LAW OFFICES OF JOHN DAY, P.C., Brentwood, Tennessee, for Appellant.  Jeffrey E. Sandberg, Mark B. Stern, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

　　MOORE, J., delivered the opinion of the court in which McKEAGUE, J., joined. MERRITT, J. (pp. 14-18), delivered a separate dissenting opinion.

_____

**OPINION**
_____

　　KAREN NELSON MOORE, Circuit Judge.  This case arises out of the execution of a field experiment aimed at improving the government's technical capacity to respond

1

to Improvised Explosive Devices (IEDs). Plaintiff-Appellant Debra R. Kohl ("Kohl") seeks recovery for injuries allegedly sustained due to negligence of a federal employee operating a winch while collecting debris generated by the planned detonation of explosives during this government-funded research experiment. Kohl appeals the district court's determination that her claims were barred by the discretionary-function exception to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.*, and that the court thus lacked subject-matter jurisdiction. Because we conclude that the government's decisions about how to extract evidence from the site of the explosions, and what types of equipment to use to do so, are shielded from liability by the discretionary-function exception, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

On December 4, 2007, Kohl, a certified bomb technician with the Hazardous Devices Unit of the Metropolitan Nashville Police Department ("MNPD"), participated in a research experiment funded by the U.S. Department of Defense at the Tennessee State Fire Academy in Bell Buckle, Bedford County, Tennessee. The experiment involved constructing and detonating explosive devices in vehicles and then collecting post-blast debris for laboratory analysis as forensic evidence. *Kohl v. United States*, No. 3–09–1190, 2011 WL 4537969, at *1 (M.D. Tenn. Sept. 29, 2011) (unpublished opinion). This experiment was part of a larger research project conducted by scientists working at Oak Ridge National Laboratory, managed by the University of Tennessee-Battelle for the Department of Energy. R. 41 (Pl.'s Response to Def.'s Stmt. of Undisputed Material Facts [hereinafter "Undisputed Material Facts"] at 1) (Page ID #661). Explosives Enforcement Officers of the federal Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), Jason Harrell and Alex Guerrero, assisted and participated in the experiment.

Following the detonation of the explosives, and after an "all-clear" was given, participants in the project, including Kohl, entered the explosives range to inspect the vehicles. *Id.* at 4 (Page ID #664). Kohl and Officer Todd Mask, another MNPD bomb technician participating in the project, proceeded to investigate one of the vehicles, a

minivan. *Id.* at 4–5 (Page ID #664–65). Kohl searched the passenger's side of the minivan for evidence, while Mask attempted to search the driver's side of the vehicle. *Id.* at 5 (Page ID #665). However, the driver's side door of the minivan had "buckled," and as a result, it would not open. R. 38-6 (Mask Dep. at 26:2–3) (Page ID #636). The investigation team decided to try to access the inside of the van by using a winch on the driver's side door. R. 41 (Undisputed Material Facts at 6) (Page ID #666). After a first failed attempt to winch the door, a second attempt was made. R. 38-5 (Kohl Dep. at 71:8–18) (Page ID #594). While other team members were preparing to winch the door a second time, Kohl testified that she returned to the passenger's side door of the van and continued searching for evidence. *Id.* at 72:15–18 (Page ID #595). During this time, Kohl was "leaning into the passenger side of the vehicle." R. 1 (Compl. ¶ 10) (Page ID #3).

Then, although the record is not clear about exactly how Kohl came into contact with the vehicle, Kohl testified that she remembers feeling "pain in the top of [her] head" and that she "saw stars." R. 38-5 (Kohl Dep. at 74:8–9) (Page ID #597). The complaint alleges that "[d]ue to the winching, the door came loose and the door frame of the vehicle crashed into Ms. Kohl's head." R. 1 (Compl. ¶ 14) (Page ID #3). After seeking medical care the following day, Kohl was referred to a neurologist, who diagnosed her with "post-concussive syndrome with persistent headaches and cognitive changes." *Kohl*, 2011 WL 4537969, at *2 (internal quotation marks omitted). Since the incident, Kohl has not been employed. *Id.*

Kohl filed this action on December 16, 2009 in the U.S. District Court for the Middle District of Tennessee under the FTCA, 28 U.S.C. §§ 1346(b), 2671–2680, seeking damages. R. 1 (Compl. ¶ 3) (Page ID #1). The complaint alleges that federal employees were negligent in "operat[ing] the winch in an unsafe manner," "fail[ing] to warn Plaintiff of dangers regarding the winch," "conduct[ing] the operation, including winching of the vehicle, without proper safety protocols," and by "fail[ing] to use reasonable and due care to prevent injury to Plaintiff." *Id.* ¶ 19 (Page ID #4). Defendant United States filed a motion to dismiss or, alternatively, for summary judgment on

January 7, 2011, in part on the basis that the district court lacked subject-matter jurisdiction.  R. 34 (Def.'s Mot. to Dismiss at 1) (Page ID #140).  Finding that the conduct at issue in this case falls within the discretionary-function exception to the FTCA, the district court dismissed Kohl's claims for lack of subject-matter jurisdiction. *Kohl*, 2011 WL 4537969, at \*9.  Kohl timely filed an appeal on October 5, 2011.  R. 72 (Notice of Appeal) (Page ID #1282).

## II.  ANALYSIS

### A.  Discretionary-Function Exception:  Legal Framework

At issue is whether the district court erred in finding that it lacked subject-matter jurisdiction over Kohl's claims.  We review de novo a district court's dismissal based on the application of the discretionary-function exception to the FTCA.[1] *Rich v. United States*, 119 F.3d 447, 449 (6th Cir. 1997); *Rosebush v. United States*, 119 F.3d 438, 440 (6th Cir. 1997).

Sovereign immunity generally bars claims against the United States without its consent.  *See Montez ex rel. Estate of Hearlson v. United States*, 359 F.3d 392, 395 (6th Cir. 2004) (citing *United States v. Orleans*, 425 U.S. 807, 814 (1976)).  Congress, through the FTCA, waived this governmental immunity for claims brought

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).  The FTCA's waiver of immunity is limited, and contains a series of exceptions.  *Id.* § 2680.  One of these exceptions—known as the discretionary-

---

[1]Although there is some confusion over whether Defendant United States is making a facial or factual attack on jurisdiction under Rule 12(b)(1), *see Kohl*, 2011 WL 4537969, at \*3, "[a]s the district court made essentially no factual findings in deciding it . . . lacked jurisdiction, we will treat this as a 'facial' 12(b)(1) motion." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).  In a facial attack on jurisdiction, all allegations of the plaintiff must be accepted as true. *See Abbott v. Michigan*, 474 F.3d 324, 328 (6th Cir. 2007).

function exception—states that the FTCA's waiver does not apply to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." *Id.* § 2680(a). If a claim falls within this exception, then federal courts lack subject-matter jurisdiction, and the claim must be dismissed. *See Feyers v. United States*, 749 F.2d 1222, 1225 (6th Cir. 1984). This appeal concerns whether the conduct at issue in Kohl's claims falls within the discretionary-function exception.

Determining whether a claim falls within the discretionary-function exception involves a two-step test. *See United States v. Gaubert*, 499 U.S. 315, 322–23 (1991); *Rosebush*, 119 F.3d at 441. The first step "requires a determination of whether the challenged act or omission violated a mandatory regulation or policy that allowed no judgment or choice." *Rosebush*, 119 F.3d at 441 (citing *Gaubert*, 499 U.S. at 322–23). If there was such a violation of a mandatory regulation or policy, then the discretionary-function exception will not apply, because "there was no element of judgment or choice," *id.*, and thus "the employee has no rightful option but to adhere to the directive." *Berkovitz v. United States*, 486 U.S. 531, 536 (1988).

If, on the other hand, there was room for judgment or choice in the decision made, then the challenged conduct was discretionary. *See Rosebush*, 119 F.3d at 441. In such a case, the second step of the test requires a court to evaluate "whether the conduct is 'of the kind that the discretionary function exception was designed to shield'" from liability. *Id.* (quoting *Gaubert*, 499 U.S. at 322–23). The discretionary-function exception is meant "to prevent judicial 'second-guessing' of . . . administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense* (*Varig Airlines*), 467 U.S. 797, 814 (1984).

The discretionary-function exception's scope extends beyond high-level policymakers, and includes government employees at any rank exercising discretion. *Id.* at 813 ("[I]t is the nature of the conduct, rather than the status of the actor, that

governs whether the discretionary function exception applies in a given case."). "A discretionary act is one that involves choice or judgment; there is nothing in that description that refers exclusively to policymaking or planning functions." *Gaubert*, 499 U.S. at 325. Even where government action is taken on the day-to-day operational level, and implements broader governmental objectives, if that action involves choice or judgment that is "susceptible to policy analysis," then it falls within the discretionary-function exception. *Id.* "We also consider the fact that '[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion.'" *Sharp ex rel. Estate of Sharp v. United States*, 401 F.3d 440, 443 (6th Cir. 2005) (quoting *Gaubert*, 499 U.S. at 324).

**B. Application to Kohl's Case**

In determining whether Kohl's claims fall within the discretionary-function exception, "the crucial first step is to determine exactly what conduct is at issue." *Rosebush*, 119 F.3d at 441. The parties disagree about how to characterize appropriately the conduct. Kohl argues that the relevant conduct is "use of a winch on a large minivan while people are working in and around the minivan, and whether the Government employee sufficiently alerted those people before doing so." Appellant Br. at 21–22; *see id.* at 22 ("Plaintiff's claim is for operator error in using machinery."). Kohl's theory is that the context of the use of the winch is irrelevant to the analysis of the discretionary-function exception. Using this narrow characterization of the conduct at issue, Kohl goes on to argue that the ministerial act of using a winch does not involve policy-related judgments, and thus is not shielded from liability by the discretionary-function exception. *See id.* at 22–23. The Government, on the other hand, emphasizes the context in which the alleged injury occurred: a field experiment which recreated a bomb scene and required trained bomb technicians to recover evidence from the scene. Using this broad characterization, the Government argues that the decisions related to how best to conduct the experiment did involve policy-related judgments and thus are shielded

from liability.  *See* Appellee Br. at 22–23.  The Government's theory appears to be tantamount to a contention that every decision, "[a]t every level," in the context of the post-blast investigation would be shielded from liability.  Appellee Br. at 25–26.  Each of these views is too extreme.

Kohl's narrow characterization must be rejected, because it "collapses the discretionary function inquiry into a question of whether the [government] was negligent." *Rosebush*, 119 F.3d at 442.  "Negligence, however, is irrelevant to our inquiry at this point." *Id.*  We rejected a similarly narrow approach in *Rosebush*, which involved a child who was severely burned when she fell into a fire pit on a campground site maintained by the United States Forest Service.  Plaintiff argued that the Forest Service was negligent in "fail[ing] to make the fire pit safe for unsupervised toddlers, and to warn of the dangers of the fire pit." *Id.* at 441.  The *Rosebush* court held that this characterization was too narrow, and that instead, the conduct at issue was the maintenance of the Forest Service's campsites and fire pits.  *See id.* at 442.  Similarly, in *Bell v. United States*, a panel of this court in an unpublished opinion rejected a narrow characterization of the conduct at issue for purposes of analysis under the discretionary-function exception.  *See* 238 F.3d 419, 2000 WL 1720932, at *3–4 (6th Cir. Nov. 6, 2000).  *Bell* involved a slip and fall due to a wet floor of a lobby of a post office building, which was open to the public even during hours when the Post Office itself was closed and unstaffed.  *Bell*, 2000 WL 1720932, at *1.  Suing the United States under the FTCA to recover for her injuries, the plaintiff argued that the relevant conduct was the "Post Office's lack of efforts to maintain the premises in a reasonably safe manner." *Id.* at *3.  Again, we concluded that this formulation was too narrow, instead holding that "the conduct at issue here is the [] postmaster's conduct in deciding under what circumstances to allow the lobby area to remain open to the public at times when the service windows were closed." *Id.* at *4; *see also Merando v. United States*, 517 F.3d 160, 168 (3d Cir. 2008) (rejecting a narrow framing of the conduct at issue as whether the government had discretion "not to find and remove the hazardous tree," instead concluding that the "relevant issue" was whether the government "had discretion in formulating and executing [the hazardous tree management] plan"); *Autery v. United*

*States*, 992 F.2d 1523, 1527–28 (11th Cir. 1993) (rejecting plaintiff's contention that the relevant conduct was the allegedly negligent manner in which the park's employees carried out a plan to remove hazardous trees, instead concluding that the relevant issue was "[w]hether park personnel had discretion in executing that plan").

Kohl's formulation of the conduct at issue is inappropriate for the same reason: by framing the question as whether the ATF employee operated the winch in a safe manner, Kohl "begs the question." *Autery*, 992 F.2d at 1528. To characterize the issue as whether the ATF employees had discretion to operate the winch in an unsafe manner is to ask whether the employees had discretion to be negligent. As we stated in *Rosebush*, negligence is irrelevant at this stage of the inquiry. *Rosebush*, 119 F.3d at 442. The issues of whether the ATF employee who operated the winch was negligent, and whether the safety precautions taken were reasonable, are separate inquiries from the analysis of the discretionary-function exception. "It is the governing administrative policy," rather than the negligence of a particular employee, "that determines whether certain conduct is mandatory for purposes of the discretionary function exception." *Autery*, 992 F.2d at 1528. Thus, the conduct at issue must be framed in terms of the scope of administrative authority to use discretion in executing the research experiment. More properly formulated, the conduct at issue is "the recovery of forensic evidence and the necessary actions taken to facilitate that recovery, including actions taken to dislodge the door of the minivan so that evidence could be recovered." *Kohl*, 2011 WL 4537969, at *7. Our analysis thus focuses on whether ATF's actions in collecting the forensic evidence from the field test, including decisions about what equipment to use, are protected by the discretionary-function exception.

Regarding the first step of the discretionary-function-exception test, neither party in this case argues that there was a mandatory policy or regulation at issue. *See* Appellant Br. at 17 ("It is undisputed that there was no mandatory regulation or policy governing the federal employees' conduct in this case[.]"); Appellee Br. at 19. Because there was no specific regulation or policy governing the post-blast investigation, the

challenged government conduct involved discretion.[2]  *See Berkovitz*, 486 U.S. at 536.

Thus, the district court properly concluded that the "relevant inquiry" is at the second

step of the two-part discretionary-function-exception test.  *Kohl*, 2011 WL 4537969, at

*6.

The second step of the test requires a determination of whether the conduct is

"'of the kind that the discretionary function exception was designed to shield'" from

governmental liability.  *Gaubert*, 499 U.S. at 322–23 (quoting *Berkovitz*, 486 U.S. at

536).  It is important to note that framing the conduct more broadly, as we have done,

does not imply that every action taken in connection with a government program will be

brought under the umbrella of the broader policy-related judgments involved in the

program.  *See Bultema v. United States*, 359 F.3d 379, 383 (6th Cir. 2004) (explaining

that an "act does not necessarily amount to an exercise of a discretionary function merely

because carrying out the general policy provided the opportunity for the negligent act").

Although difficult to draw, there is a line between conduct "of the kind that the

discretionary function exception was designed to shield," *Berkovitz*, 486 U.S. at 536, and

the sorts of run-of-the-mill torts, which, while tangentially related to some government

program, are not sufficiently "grounded in regulatory policy" so as to be shielded from

liability.  *Gaubert*, 499 U.S. at 325 n.7; *see also Totten v. United States*, 806 F.2d 698,

700 (6th Cir. 1986) (explaining that Congress, in the discretionary-function exception,

"was drawing a distinction between torts committed in the course of such routine

activities as the operation of a motor vehicle and those associated with activities of a

more obviously governmental nature").  Where an act "cannot be said to be based on the

purposes that the regulatory regime seeks to accomplish," the discretionary-function

exception will not apply.  *Gaubert*, 499 U.S. at 325 n.7.  The *Gaubert* Court used

negligent driving by a government actor on government business as an example of

---

[2]Kohl appears to argue in her brief that *because* there was no formal or written policy addressing the conduct at issue, the discretionary-function exception cannot apply.  *See* Appellant Br. at 23–26.  This argument makes little sense.  The governing precedents do not imply that government conduct can be discretionary only if it is taken pursuant to a written directive of some sort.  Rather, the existence of such a formal statute, regulation, or policy prescribing a course of action means that the discretionary-function exception will not apply.  *See Berkovitz*, 486 U.S. at 536.  Indeed, it is more likely that government agents are exercising discretion if they are conducting an experiment that is not governed by a written manual or regulation, because such decisions will involve "an element of judgment or choice."  *Id.*

conduct that would not be shielded by the discretionary-function exception. *Id.* Driving a car, while it "requires the constant exercise of discretion," is not sufficiently connected to regulatory policy to fall within the discretionary-function exception. *Id.*

The key question in this appeal is whether the conduct at issue here was sufficiently based on the purposes that the regulatory regime—here the research experiment—sought to accomplish. *See id.* Although this is a close case, we conclude that the answer to this question is yes. The decision to use a winch was part of the decisionmaking involved in deciding how best to conduct the post-blast investigation. *Cf. Konizeski v. Livermore Labs* (*In re Consol. U.S. Atmospheric Testing Litig.*), 820 F.2d 982, 993–95 (9th Cir. 1987) (finding that claims of negligence for failure to maintain sufficient safety precautions during "inherently dangerous" field testing of nuclear weapons were barred by the discretionary-function exception); *Creek Nation Indian Hous. v. United States*, 677 F. Supp. 1120, 1124–26 (E.D. Okla. 1988) (finding, in a case involving an explosion of bombs being transported by a commercial carrier, that the discretionary-function exception barred negligence claims against the United States for alleged failure to take adequate safety precautions regarding transportation of explosives).

The planning and execution of the research experiment is susceptible to policy analysis, including judgments about how to respond to hazards, what level of safety precautions to take, and how best to execute the experiment in a way that balanced the safety needs of the personnel and the need to gather evidence from the vehicles. *See Rosebush*, 119 F.3d at 444 (explaining that even if there is no indication "that policy concerns were the basis of a challenged decision, the discretionary function exception applies if the decision is susceptible to policy analysis") (citing *Myslakowski v. United States*, 806 F.2d 94, 97 (6th Cir. 1986)). Decisions about how to execute the experiment include judgments as to what kinds of equipment to use to extract the evidence for forensic laboratory analysis. These equipment-related decisions were "intimately related" to the execution of the field experiment—in other words, judgments as to how to extract the evidence from the vehicles after the bombs were detonated, including what

equipment to use, were necessary to the execution of the project. *See Graves v. United States*, 872 F.2d 133, 137 (6th Cir. 1989). Thus, a challenge to the use of a particular piece of equipment, i.e., the winch, would amount to a challenge as to the overall execution of the research project. *See Bultema*, 359 F.3d at 383.[3] The conduct at issue is thus unlike the *Gaubert* Court's example of driving a car in connection with a government mission; the ATF employee's use of the winch was sufficiently related to the purposes that the post-blast investigation sought to accomplish to fall within the discretionary-function exception.

We have previously concluded that in executing a government program, the government's decisions as to what equipment to use and how to use that equipment fall under the discretionary-function exception, absent governing standards or directives. *See Totten*, 806 F.2d at 701 (holding that decisions regarding the kinds of equipment used and the manner in which fuel was removed following a missile-test failure were shielded by the discretionary-function exception); *see also Flynn v. United States*, 902 F.2d 1524, 1530–31 (10th Cir. 1990) (holding that the discretionary-function exception barred claims against National Park Service employees for negligent operation of emergency lights on emergency vehicles because there were "no fixed standards for training or use of emergency vehicles").

Further, Kohl's contention that the conduct falls outside the exception because it involved "machine operator error" is of no avail. Appellant Reply Br. at 5. The Supreme Court's discretionary-function-exception cases have made clear that the fact that the decisionmaking involved occurred on an operational level does not affect the analysis. *See Gaubert*, 499 U.S. at 325; *Varig Airlines*, 467 U.S. at 820. The discretionary-function exception protects both high-level policymakers and the

---

[3]In *Bultema*, we stated that an action which is not a "necessary concomitant" of a broader discretionary policy would not fall within the discretionary-function exception. *Bultema*, 359 F.3d at 383. At oral argument, Kohl relied on this statement and argued that because the use of the winch was not a necessary concomitant of the broader discretionary decisions about how to run the experiment, any negligence in using the winch would not be shielded from liability. As explained above, we do not agree that the decision to use the winch was tangential. Given that a main part of the experiment involved recovering evidence from the explosives range for later laboratory analysis, decisions about what equipment to use to extract the evidence were a necessary part of the decisions involved in how to execute the experiment.

employees who implement broader governmental objectives.  In *Varig Airlines*, the Court held that the discretionary-function exception shielded not only the federal government's broad decision to implement a "spot-check" system for ensuring compliance of airplanes with FAA regulations, but also "the acts of FAA employees in executing" the program.  *Varig Airlines*, 467 U.S. at 820.  Similarly, in *Gaubert*, the plaintiffs argued that some of the government's actions fell outside the discretionary-function exception because "they involved the mere application of technical skills and business expertise" to the supervision of a savings-and-loan association.  *Gaubert*, 499 U.S. at 331.  The Court rejected this proposition, holding that operational, day-to-day decisions can fall within the discretionary-function exception.[4]  *Id.* at 331–32.  These cases make clear that the discretionary-function exception protects decisions at the operational level, including choices like the one ATF employee Guerrero made in this case about when to use a winch.  Because ATF employees had discretion to decide how best to conduct the field test, including which equipment to use, the decision to use a specific piece of equipment in this particular situation, i.e., to use a winch to open the door of the minivan, also falls within the government's discretionary decisions.  This is

---

[4]The dissent, citing the Supreme Court's decision in *Indian Towing Co. v. United States*, 350 U.S. 61 (1955), concludes instead that "once the government makes a protected policy, every implementing step like conducting an experiment or repairing damaged equipment must proceed with 'due care' in carrying out its decision."  *See* Dissent Opn. at 14.  First, we note that the discretionary-function exception was not at issue in *Indian Towing*, because the government in that case conceded it was not applicable.  *See* 350 U.S. at 64.  This appears to have been because the allegedly negligent acts occurred at the operational level, which, under early Supreme Court precedent, were not within the scope of the discretionary-function exception.  *See Harrell v. United States*, 443 F.3d 1231, 1237 (10th Cir. 2006).  Thus, the Court's statements about the government's duty to maintain the lighthouse related to "hornbook tort law," not discretionary-function-exception analysis.  *See* 350 U.S. at 64.  Even if we read the government's concession in *Indian Towing* as an indication that the conduct at issue did not involve discretion, but rather only a "ministerial" act, we do not think that the case's holding that the government may be sued for negligence involving the ministerial act of "maintaining a physical object in good working order" necessitates a different result than we reach here.  *See Alfrey v. United States*, 276 F.3d 557, 567 (9th Cir. 2002).  Second, several courts of appeals have explained that *Indian Towing*, decided in 1955, is "simply not persuasive authority in the context of the discretionary function exception" given subsequent Supreme Court decisions.  *Harrell*, 443 F.3d at 1237; *see, e.g.*, *Thames Shipyard & Repair Co. v. United States*, 350 F.3d 247, 255 (1st Cir. 2003); *Ochran v. United States*, 117 F.3d 495, 505 (11th Cir. 1997); *Baum v. United States*, 986 F.2d 716, 723 (4th Cir. 1993).

The dissent further relies on *Downs v. United States*, 522 F.2d 990 (6th Cir. 1975), stating that "[t]he relevant question [i]s whether the agents' activities entailed 'the formulation of governmental policy, whatever the rank of those so engaged.'"  Dissent Opn. at 18 (quoting *Downs*, 522 F.2d at 997).  But the Supreme Court has explained that the discretionary-function exception applies not only to policy formulation, but also to the implementation of such policies, when discretion is involved in such implementation.  *See Gaubert*, 499 U.S. at 325–26; *Varig Airlines*, 467 U.S. at 820.  Regardless of the wisdom of the dissent's focus on redistributing the cost of accidents, its analysis is not in accord with current precedents regarding the discretionary-function exception.

so even if Guerrero was negligent in using the equipment—the discretionary-function exception protects even abuses of discretion. 28 U.S.C. § 2680(a) (stating that the FTCA does not apply to claims based on discretionary functions, "whether or not the discretion involved [was] abused"). Kohl's claims against the United States for negligence during the research experiment are thus barred by the discretionary-function exception.

## III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court dismissing Kohl's claims for lack of subject-matter jurisdiction.

—————————

**DISSENT**

—————————

MERRITT, Circuit Judge, dissenting.  It seems to me that a private person acting as agent of a company, who is trying to open the door of a car with a regular winch with a strong spring, would normally be subject to standard tort principles in case of injury. Instead, my colleagues simply say there can be no such liability, despite the statutory language,[1] if the conduct "involves choice or judgment" because — for some unstated reason — liability for such a choice "amount[s] to a challenge as to the overall execution of the research project." (Opn., p. 11.)  Why?  The problem with formulating a standard or principle this way is that almost every act by government or private agent in the scope of employment would "challenge a policy" if it is for the purpose of carrying out some government or private interest, policy or plan.

**I.**

The court's theory is incoherent and directly contrary to the early case of *Indian Towing Co. v. United States*, 350 U.S. 61 (1955), decided not long after the Federal Tort Claims Act was enacted.  In the *Indian Towing* case the Court concluded that once the government makes a protected policy, every implementing step like conducting an experiment or repairing damaged equipment must proceed with "due care" in carrying out its decision.  In *Indian Towing* the government set up a lighthouse service.  The government agent did not "repair" the light properly:

> The Coast Guard need not undertake the lighthouse service.  But once it exercised its discretion to operate a light on Chandeleur Island and engendered reliance on the guidance afforded by the light, *it was obligated to use due care* to make certain that the light was kept in working order . . . and to repair the light or give warning that it was not functioning.

—————————

[1] The statute is intended to waive immunity "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).

350 U.S. at 69 (Emphasis added).  Likewise, once the government decided to carry out the hazardous IED experiment "it was obligated to use due care."  The firearms agent using the winch did not have to ponder the nature of a policy.  No considerations of social policy would come to mind in getting the door opened.  The question should be the regular tort question for "private" persons in the economy:  did the agent use due care?

Otherwise, there are severe distributional consequences for the entire society.  The costs of torts by government agents are distributed only to private individuals.  Here the plaintiff is permanently disabled by alleged government error.  The government distributes income to the private companies  that manufacture the IED's, the car and the winch.  But the plaintiff's injuries somehow become a "challenge to government policy" and cannot be compensated.

## II.

The nature of the conduct here is perfectly clear:  a federal agent attempted to remove a door from a minivan with a winch in order to obtain evidence from within.  We need not assess the broader context of the experiment to reach this simple understanding.  Of course, the baseline definition of the conduct should not assume negligence before trial — at least not anymore than it should assume that the conduct involved policy judgment.  But I fail to see how a simple description of the agent's action conflates discretionary-function analysis with negligence, as the majority believes it does.

Having defined the conduct, its context becomes relevant to the legal standard we must apply:  Whether the government agent's decision was "grounded in social, economic, [or] political policy."  *United States v. Gaubert*, 499 U.S. 315, 323 (1991).  To make this determination, we typically must discern the legal authority for an agent's action.  Even where there is no explicit constraint on an agent's action — and here there is not — discretion is guided by some sort of governmental pronouncement.  An agent acquires immunity for the government not simply by making a choice — she acquires it by making a choice that substantively constitutes the policy behind a statute,

regulation, or agency guidance. *See id*. at 325 (holding that the discretionary function exception only protects actions "grounded in the policy of the regulatory regime").

In this case, the Government has been quite sketchy about the authority or purpose of the IED experiment at issue. Without an adequate explanation of the authority for the experiment — which appears not to have been disclosed before the district court granted the motion to dismiss — it is clear that the agent's decision was not grounded in any policy that the government or my colleagues can articulate. Even if we assume some sort of agency guidance and interpret the exercise in the way most favorable to the Government — as a training mission to recover evidence — I fail to see how the decision to winch the door off the van required any sort of policy judgment.

At root, policy judgment requires a balancing of interests. *See Myers v. United States*, 17 F.3d 890, 898 (6th Cir. 1994) ("Th[e] *balancing* of interests . . . characterizes the type of discretion that the discretionary function exception was intended to protect."). Of course, balancing is a necessary element of discretion. The majority believes that the agent's decision to use a winch was susceptible to policy analysis because it required him to "execute the experiment in a way that balanced the safety needs of the personnel and the need to gather evidence from the vehicles." (Opn., p. 12.) This sort of balancing is a meaningless way to identify policy analysis. Had the agent crashed his car while speeding to the scene of the exploded van, he would have tacitly been balancing the safety of his passengers against the need to reach the subject of the experiment. Yet crashing a car is not behavior from which the government can claim immunity. The relevant question is not whether the government actor engaged in some sort of balancing, but whether judicial interference with the actor's balancing would "seriously handicap efficient government operations." *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984) (quoting *United States v. Muniz*, 374 U.S. 150, 163 (1963)).

Complex balancing pursuant to stated regulatory authority has characterized the situations in which courts apply the discretionary function exception. In *United States v. Varig Airlines*, for example, the Federal Aviation Administration conducted this sort of balancing when determining how best to carry out regulations requiring it to inspect

aircraft. *Varig Airlines*, 467 U.S. at 814-20. As a result, the government's ultimate decision to approve a defective airplane was grounded in policy and subject to the discretionary function exception. Similarly, a series of this circuit's cases have held the government immune from suit for failing to maintain public roads and grounds, reasoning that maintenance decisions require government actors to make multi-factor calculations about how to manage finite resources. *See Edwards v. TVA*, 255 F.3d 318, 324-25 (6th Cir. 2001) (TVA must balance financial, aesthetic, environmental, and safety concerns when determining how to maintain area around dam); *Rich v. United States*, 119 F.3d 447, 451 (6th Cir. 1997) (Army Corps of Engineer's decision about how to maintain road is "at bottom a question of how best to allocate resources"); *Rosebush v. United States*, 119 F.3d 438, 444 (6th Cir. 1997) (maintenance of campsite requires "balancing the needs of the campground users, the effectiveness of various types of warnings, aesthetic concerns, financial considerations, and the impact on the environment, as well as other considerations").

By contrast, no complex balancing was required in this case. The challenge facing the agent was how to get the door off the van to recover evidence. The Government points to no statute, regulation, or agency guidance granting the agent discretion to choose among a number of methods to achieve this task. Assuming that the agent had authority to remove the door, the ultimate decision to use the winch required no calculus as to the best use of government resources or the cost of proceeding otherwise. Indeed, there is no evidence that the agent had any tool but the winch available, or that he did anything other than grab the instrument nearest at hand. The decisional process the agent employed is not the sort of judgment characteristic of social, economic, or political policy.

The discretionary function exception has not always been so muddled as the majority makes it today. In *Downs v. United States*, 522 F.2d 990 (6th Cir. 1975), this Court considered the FBI's botched rescue from an airplane highjacking. Alerted that the plane had landed but was in need of fuel, agents refused to provide the fuel and attempted to shoot out the plane's tires and engines. In the course of this action, the

highjacker shot and killed the passengers. We held that the discretionary function exception did not apply in a subsequent negligence suit against the government. The relevant question was whether the agents' activities entailed "the formulation of governmental policy, whatever the rank of those so engaged." *Downs*, 522 F.2d at 997. We concluded that the answer was no, and supported this conclusion with the reasoning that "[t]he need for compensation to citizens injured by the torts of government employees outweighs whatever slight effect vicarious government liability might have on law enforcement efforts." *Id.* at 998. In other words, the lawsuit did not substantially interfere with the FBI's highjacking policy.

The law has not changed since *Downs*. We are still required to assess whether the decision of a government actor is grounded in social, economic, or political policy; and the motivation for this inquiry is still to prevent "judicial second-guessing" of such policies. *Gaubert*, 499 U.S. at 323. Yet somehow our jurisprudence has come unmoored from these principles. We now seem inclined to redistribute the costs of accidents created by government to private individuals who are much less capable of shouldering the burden. Because the agent's decision to use a winch required no policy judgment, and because the plaintiff's suit would in no way interfere with government operations, I respectfully dissent.